Anthony DI LORENZO, Plaintiff,

v.

UNITED STATES of America et al., Defendants.

No. 79 Civ. 1931 (VLB).

United States District Court, S. D. New York.

July 17, 1980.

Clarence B. Jones, New York City, for plaintiff.

John S. Martin, Jr., U. S. Atty., S. D. N. Y., New York City, for defendants by Robert S. Groban, Jr., Sp. Asst. U. S. Atty., New York City.

## MEMORANDUM ORDER

VINCENT L. BRODERICK, District Judge.

### I.

The plaintiff, a federal prisoner, brought this action against the United States, various federal agents and officials in their individual and official capacities (collectively "the federal defendants"), various state agents and officials, Braniff Airways, and an employee of Braniff Airways, alleging a host of civil rights violations.

### II.

The federal defendants move to dismiss, or alternatively for summary judgment, on a variety of grounds.

■ Insofar as the complaint requests relief against the United States and against federal defendants in their official capacities, summary judgment is granted. Insofar as the complaint seeks damages against individual federal defendants summary judgment is granted in part and denied in part. *See* Fed.R.Civ.P. 56(d).[1]

### III.

*Undisputed facts.*

The following facts are not in dispute.

Plaintiff was convicted in this district in December 1969 of the crime of conspiracy and of the interstate transportation of stolen securities. He was sentenced to imprisonment for ten years. In June, 1971 he was committed to the custody of the Bureau of Prisons. In July, 1972 he escaped from custody while on a dental furlough and remained at large until February, 1977.

In February of 1977, an agent of the Drug Enforcement Administration operating in Venezuela, acting on the information that plaintiff was a Department of Justice fugitive, arranged for his arrest by Panamanian officials. He devised a scheme by means of which plaintiff was induced to fly from Venezuela to Panama City, Panama. Upon landing in Panama City, plaintiff, at the request of DEA agents, was apprehended by Panamanian agents who held him for seven days and confiscated an assortment of merchandise they found in his possession. During that period plaintiff was beaten and otherwise abused by his Panamanian captors.

On February 24, 1977 plaintiff was placed on board a Braniff airliner bound for Miami. The plaintiff created a commotion aboard the aircraft and was forcibly subdued by DEA agents.

1. Counts I, II, VI, VII, and IX are dismissed as against the United States and the federal defendants. Counts III, IV, and V are dismissed as against the United States and the federal defendants in their official capacities. There seems to be no Count VIII.

  Count X is dismissed. It seeks declaratory and injunctive relief as against the United States with respect to property of plaintiff in

Once the plane arrived in Miami, plaintiff was lodged by the DEA agents in a State of Florida prison facility, and later moved to the Metropolitan Correction Center in New York. During the period of his incarceration, plaintiff has frequently received medical attention.

### IV.

**A. Claims Against Individual Federal Defendants**

*1. Abuses while in custody in Panama.*

I begin by disposing of the abuses perpetrated by Panamanian agents.

Plaintiff was tortured by his Panamanian captors during his custody in Panama and his property was confiscated. The Panamanian officials have not been named or served in this action.

■ Nothing before me suggests the implication of any of the federal defendants in these abuses. While the Panamanian agents were acting at the request of DEA agents when they arrested plaintiff and held him in custody,[2] there is no evidence of any involvement by the DEA in the conduct of the Panamanian agents between the time of plaintiff's arrest in Panama and the time of his deportation. The constitution does not protect the plaintiff from the "law enforcement activities of foreign authorities acting in their own country." *Cf. U. S. v. Busic*, 592 F.2d 13 (2d Cir. 1978). The plaintiff may not impute "vicarious liability" to the federal agents merely because they created the opportunity for abuses by Panamanian agents. *U. S. v. Lira*, 515 F.2d 68 (2d Cir.), *cert. denied*, 423 U.S. 847, 96 S.Ct. 87, 46 L.Ed.2d 69 (1975).

Panama, and injuries suffered by plaintiff at the hands of Panamanian agents. It fails to state a claim upon which relief can be granted.

2. I have no basis for concluding that plaintiff's arrest was constitutionally infirm. The DEA agents, acting on the information that plaintiff was a fugitive from justice, had probable cause for securing his arrest.

### 2. Abduction from Panama to the United States.

Plaintiff's forcible abduction from Panama, however, does implicate some of the federal defendants; federal agents orchestrated both the plaintiff's arrest in Panama and his deportation to Miami. Plaintiff asserts that his abduction violated the Federal Kidnapping Act, 18 U.S.C. § 1201, the Fourth, Fifth, and Eighth Amendments, and international law.

"That the Bill of Rights has extraterritorial application to the conduct abroad of federal agents directed against United States citizens is well settled." *U. S. v. Toscanino*, 500 F.2d 267, 280 (2d Cir. 1974). In *Toscanino*, the Second Circuit Court of Appeals held that the federal courts could not exercise criminal jurisdiction over a defendant who was forcibly abducted to the United States from Uruguay through Brazil to the United States, in the process being beaten and tortured with the acquiescence of American officials. Drawing on recent Supreme Court expansion of the exclusionary rule the Court of Appeals held that fundamental fairness required that Toscanino be returned to his status prior to his seizure:

> [W]hen an accused is kidnapped and forcibly brought within the jurisdiction, the court's acquisition of power over his person represents the fruits of the government's exploitation of its own misconduct. Having unlawfully seized the defendant in violation of the Fourth Amendment, which guarantees "the right of the people to be secure in their persons . . . against unreasonable . . . seizures," the government should as a

matter of fundamental fairness be obligated to return him to his status quo ante.

*Id.* at 275.

In *Lujan v. Gengler*, 510 F.2d 62 (2d Cir.), *cert. denied*, 421 U.S. 1001, 95 S.Ct. 2400, 44 L.Ed.2d 668 (1975), the Court of Appeals limited the precise holding of *Toscanino* to circumstances involving something more than mere forcible abduction, such as, for example, federal government involvement in the torturing of the suspect. The *Lujan* court did not suggest that forcible abduction is a constitutionally sound procedure, but only that it is not so egregious a constitutional violation as to require application of the most drastic kind of exclusionary rule (". . . we decline to adopt in this case the extreme remedy of requiring dismissal of the indictment. For . . . adoption of an exclusionary rule here would confer total immunity to criminal prosecution." *Id.* at 68, n.9). Accordingly, that aspect of *Toscanino* which suggests that forcible abduction may violate the constitutional rights of the abductee is applicable in a civil rights action like this one, which seeks only damages.[3] Federal agents were responsible for the transportation of plaintiff, against his will, from Panama to Miami, where he was placed under arrest by federal agents. Accordingly, summary judgment for the federal defendants in their individual capacities designated in these counts is not appropriate at this stage.

### 3. Inadequate medical treatment.

The plaintiff's remaining claims all concern inadequate medical treatment.[4]

---

3. The plaintiff's assertion that the abduction violated international law is without merit. "Abduction from another country violates international law only when the offended state objects to the conduct." *Lujan v. Gengler*, 510 F.2d 62, 68 (2d Cir. 1975). There is no evidence before me to suggest that Panama objected to the procedure followed with respect to plaintiff.

In light of my disposition of this aspect of the complaint on constitutional grounds, I find it unnecessary to rule on the existence of an implied private right of action under the Federal Kidnapping Act, 18 U.S.C. § 1201.

4. To the extent that these claims request injunctive relief against federal officials in their official capacity, they would not be barred by sovereign immunity; sovereign immunity does not preclude injunctive relief against federal officers alleged to be acting unconstitutionally. *Larson v. Domestic Foreign Corp.*, 337 U.S. 682, 690, 69 S.Ct. 1457, 1461, 93 L.Ed. 1628 (1949); *Fairchild, Arabatzis & Smith, Inc. v. Sackheim*, 451 F.Supp. 1181, 1187 (S.D.N.Y. 1978).

Plaintiff claims there was an on-going failure, in Florida and later at the Metropolitan Correction Center in New York, to provide him with adequate medical care.

Plaintiff asserts that there was a delay in according him medical treatment which had been indicated by a series of tests. He asserts that while a federal judge had ordered that plaintiff receive certain medical treatment he was instead treated in a hospital psychiatric unit. He further asserts that while the prison doctors initially recommended that he be given traction treatment, he did not receive that treatment.

It is not at all clear that plaintiff's allegations would make out a claim for medical malpractice. The condition or conditions as to which the treatment was and is inadequate are neither named nor described in the complaint. There is no basis suggested in the complaint for inferring that any given medical decision—the decision not to prescribe traction, for example—was not taken in the plaintiff's best interests.

· ▮ Even if the medical treatment aspects of the complaint were sufficient to sustain a common law tort action, they would fall far short of describing a constitutional violation. As the Supreme Court held in *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), mere medical malpractice will not sustain an Eighth Amendment claim; only "deliberate indifference" to "serious medical needs" would be egregious enough to sustain such a federal claim.

▮ This plaintiff has not alleged that he has "serious" medical needs. Indeed, he has not described his physical condition at all. He has not alleged that any of the federal defendants acted with malice or "callous indifference" to his needs, *see Williams v. Vincent*, 508 F.2d 541 (2d Cir. 1974), nor has he alleged facts—such as a pattern of negligent acts—from which such indifference

could be inferred. *Compare Todaro v. Ward*, 565 F.2d 48 (2d Cir. 1977). It is apparent from the complaint itself that his medical complaints have been far from ignored.[5] Indeed, the complaint describes a number of consultations with physicians, and treatment undertaken by them.[6] Accordingly, the federal defendants would be entitled to a dismissal of this claim under Fed.R.Civ.P. 12(b)(6).

Even if the complaint were, on its face, sufficient to make out a constitutional claim for lack of medical treatment, the government's unrefuted evidence, in the form of voluminous medical records, establishes that the plaintiff has received careful and continuous medical attention. Accordingly, the government would be entitled to summary judgment on this claim even if said claim could survive a 12(b)(6) motion.

▮ It is apparent that the plaintiff is simply taking issue with the treatment prescribed, and that his status as a prisoner limits his freedom to seek alternative treatment. Legitimate as that grievance may be in other contexts, it does not make out a claim for cruel and unusual punishment. *Williams, supra*, 508 F.2d at 544.

## B. Claims Against United States and Officials Acting in Official Capacities

▮ Plaintiff's claims for money damages against the United States and its officials acting in their official capacities must be predicated on the Federal Tort Claims Act ("FTCA"). 28 U.S.C. § 1346(b). In the absence of such a statutory waiver, sovereign immunity would bar the relief being sought. *Norton v. U. S.*, 581 F.2d 390, 393 (4th Cir.), *cert. denied*, 439 U.S. 1003, 99 S.Ct. 613, 58 L.Ed.2d 678 (1978); *Green v. Laird*, 357 F.Supp. 227 (N.D.Ill.1973).

▮ Exhaustion of administrative remedies is a jurisdictional prerequisite to suit under the Federal Tort Claims Act. *Du-*

---

**5.** The only allegation made of a denial of medical treatment is paragraph 42 of the complaint. Plaintiff alleges that after certain tests were performed on him he received no further medical treatment for four days. The complaint does not suggest, however, that there was so urgent a need for medical treatment that a four-day delay was unreasonable, and the delay was certainly not unreasonable on its face.

**6.** E. g. Complaint, ¶¶ 42, 43, 47, 49, 50.

*charme v. Merrill-National Laboratories*, 574 F.2d 1307 (5th Cir.), *cert. denied*, 439 U.S. 1002, 99 S.Ct. 612, 58 L.Ed.2d 677 (1978). The procedures for exhaustion are set out at 28 U.S.C. § 2675(a) and (b):

(a) An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing

. . .

(b) Action under this section shall not be instituted for any sum in excess of the amount of the claim presented to the federal agency, except where the increased amount is based upon newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency, or upon allegation and proof of intervening facts, relating to the amount of the claim.

The burden is on the plaintiff to establish that such a claim was filed. *Kielwien v. United States*, 540 F.2d 676, 679 n.6 (4th Cir.), *cert. denied*, 429 U.S. 979, 97 S.Ct. 491, 50 L.Ed.2d 588 (1976).

 The plaintiff has asserted by affidavit that he served on prison personnel "various letters, memoranda and written complaints regarding medical treatment or lack thereof," and that he sent letters to the FBI, DEA and Department of Justice complaining of the abuses alleged in connection with his arrest in Panama and return to the United States. These assertions do not establish that the plaintiff has exhausted his administrative remedies: a complaint alone does not put a government agency on notice that a claim for damages is being asserted against it.

The letter attached to plaintiff's affidavit as an example of the kind of complaint he served is addressed to the warden of the MCC and notifies him of plaintiff's contemplated lawsuit against unnamed prison officials. Mere notice of a potential lawsuit is not a claim within the meaning of the Act. *Molinar v. United States*, 515 F.2d 246, 249 (5th Cir. 1975). Nowhere does this letter set forth the "sum certain" which the Act and the regulations promulgated thereunder require. 28 C.F.R. § 14.2(a); *Id.* at 249. Indeed, the letter does not even indicate that the plaintiff would seek monetary relief. The requirement that the claim state a sum certain has been very strictly construed. *House v. Mine Safety Appliances Co.*, 573 F.2d 609 (9th Cir.), *cert. denied sub nom. Silver Dollar Mining Co. v. PVO International, Inc.*, 439 U.S. 862, 99 S.Ct. 182, 58 L.Ed. 171 (1978).

I find that the plaintiff has failed to establish compliance with the statutory procedures, a jurisdictional prerequisite to Federal Tort Claims Act claims.[7] *Id.* at 249.

SO ORDERED.

---

7. The plaintiff asserts in his affidavit that his files were lost by prison officials while being transferred from one prison to another. Apparently, he expects the court to infer from this that copies of other letters and complaints he might have produced have been lost. Assuming this to be true, the burden should still be on the plaintiff to describe the contents of those letters in some specificity, including the amount of damages claimed. Without that information it is impossible to enforce the statutory requirement that:

(b) Action under this section shall not be instituted for any sum in excess of the amount of the claim presented to the federal agency, except where the increased amount is based upon newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency, or upon allegation and proof of intervening facts, relating to the amount of the claim. 28 U.S.C. § 2675(b).