Robert TOMARKIN, Plaintiff,

v.

Benjamin WARD, in his Official Capacity as Commissioner of Corrections, State of New York, Walter Fogg, Individually and in his Official Capacity as Superintendent, Green Haven Correctional Facility, "John" Smith, Individually and in his Official Capacity as Superintendent, Attica Correctional Facility, Vito Tennullo, Individually and in his Official Capacity as Superintendent, Fishkill Correctional Facility, "John" Dalsheim, Individually and in his Official Capacity as Superintendent, Ossining Correctional Facility, St. Francis Hospital; James R. MacMillian, Lt. "John" Tanner, Capt. Hyman Sperbeck, Sgt. "John" Hughes, "John" Albritton, "John" LaPierre, "John" Spano, Van Johnson, all individually and in their respective capacities as employees of the New York State Department of Corrections; Dr. Benjamin Dyett, Dr. "John" Rigney, individually and in their respective capacities as agents of New York State Department of Corrections, Defendants.

No. 78 Civ. 2466 (CHT).

United States District Court, S. D. New York.

March 11, 1982.

Conrad J. Lynn, New York City, for plaintiff.

Sutera, Siracuse & Sutera, P. C., New York City, for defendant St. Francis Hospital; Kenneth M. Dalton, New York City, of counsel.

Robert Abrams, Atty. Gen. of State of N. Y., New York City, for State defendants; Paul E. Milbauer, Asst. Atty. Gen., New York City, of counsel.

## OPINION

TENNEY, District Judge.

Plaintiff Robert Tomarkin seeks monetary and declaratory relief from various officials and employees of the New York State Department of Correctional Services, and from St. Francis Hospital ("the Hospital"), a private institution, for injuries he allegedly sustained while incarcerated at various state correctional facilities. Tomarkin brought this action pursuant to 42 U.S.C. § 1983, alleging violations of his rights under the Eighth and Fourteenth Amendments to the Constitution. The Hospital has moved for judgment on the pleadings, and the individual defendants have moved for summary judgment. For the reasons discussed below, the Hospital's motion for judgment on the pleadings is granted, and defendants' motion for summary judgment is granted in part and denied in part.

Tomarkin was convicted of grand larceny in Supreme Court, New York County on October 2, 1974 and sentenced to an indeterminate term not to exceed five years. He was incarcerated first at the Greenhaven Correctional Facility, for the two weeks prior to October 30, 1974; from there he was transferred to the Ossining Correctional Facility, and then to the Clinton, Greenhaven, Fishkill, Greenhaven, Attica, and Ossining Correctional Facilities, in turn. He was released on January 19, 1978.

Tomarkin's complaint alleges that during his incarceration he was denied adequate

medical treatment on various occasions, including one incident involving a heart attack; that he was assaulted at various times by corrections officers; that he was assaulted by another inmate, and that prison authorities refused to comply with court orders that he be provided adequate medical care and that he be released for medical treatment. Various corrections officers, doctors, and superintendents of the correctional facilities at which the plaintiff was incarcerated are named as defendants in the complaint. The complaint also names the Hospital as a defendant in connection with plaintiff's claims of inadequate medical treatment.

*The Hospital's Motion*

■ The Hospital has moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure ("Rule") 12(c), on the grounds that plaintiff has failed to state a claim on which relief can be granted.[1] On a motion for judgment on the pleadings for failure to state a claim, the Court must assume the factual allegations of the non-moving party to be true, and resolve all inferences in his favor.[2] 5 C. Wright & A. Miller, Federal Practice and Procedure § 1368, at 691 (1970); *see National Metropolitan Bank v. United States*, 323 U.S. 454, 456–57, 65 S.Ct. 354, 355, 89 L.Ed. 383 (1945); *George C. Frey Ready-Mixed Concrete, Inc. v. Pine Hill Concrete Mix Corp.*, 554 F.2d 551, 553 (2d Cir. 1977). The complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

*Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

■ Applying these principles to plaintiff's claim against the Hospital, it is clear that the Hospital is entitled to a judgment on the pleadings. Plaintiff alleges that in early January 1976, he suffered a heart attack. He was taken to the Hospital for diagnosis and treatment of his chest pains. He makes the following allegations with respect to the Hospital in his complaint:

> The diagnosis and treatment at St. Francis Hospital was wholly incorrect and improper. St. Francis Hospital was negligent in diagnosing plaintiff's condition as pleurisy when same was a heart attack.

> As a result of the foregoing negligence by defendant St. Francis Hospital, plaintiff was caused to suffer mental, physical and emotional injuries, some of which are permanent.

Assuming the truth of plaintiff's claim that the Hospital misdiagnosed and consequently mistreated his illness, plaintiff still fails to state a claim against the Hospital. " 'Mere negligence in giving or failing to supply medical treatment alone will not suffice' to support an action under § 1983." *United States ex rel. Hyde v. McGinnis*, 429 F.2d 864, 866 (2d Cir. 1970), *quoting Church v. Hegstrom*, 416 F.2d 449, 451 (2d Cir. 1969). As the Supreme Court explained in *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976):

> [A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid

---

1. Rule 12(h)(2) permits the defense of failure to state a claim upon which relief can be granted to be raised in a Rule 12(c) motion for judgment on the pleadings. This defense is normally raised in a Rule 12(b)(6) motion prior to the close of pleadings. When the defense is raised in a Rule 12(c) motion, the standards employed in determining the motion are the same as if the defense had been raised prior to the close of pleadings. *See George C. Frey Ready-Mixed Concrete, Inc. v. Pine Hill Concrete Mix Corp.*, 554 F.2d 551, 553 & n.2 (2d Cir. 1977); *Shapiro v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 353 F.Supp. 264, 268 (S.D.N.Y.1972), *aff'd*, 495 F.2d 228 (2d Cir. 1974).

2. Liability under § 1983 is premised on a deprivation of constitutional rights under color of state law. The issues involved in a determination whether a defendant acted under color of state law are complex, and are better decided after a hearing to determine the nature of the relationship between the defendant and the state, rather than on a motion to dismiss. *See Weise v. Syracuse University*, 522 F.2d 397 (2d Cir. 1975); *Braden v. University of Pittsburgh*, 477 F.2d 1 (3d Cir. 1973). For the purposes of this motion, the Court assumes the truth of plaintiff's allegation that the Hospital acted under color of state law because it acted as an agent of the Department of Corrections.

claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

In his complaint, plaintiff has not alleged deliberate indifference to his medical needs on the part of the Hospital; more important, he has not alleged any specific acts from which such indifference could be inferred. *Compare Todaro v. Ward*, 565 F.2d 48 (2d Cir. 1977). Thus, plaintiff has failed to state a claim against the Hospital.

*Motion for Summary Judgment*

The individual defendants in this action have all moved for summary judgment. "[P]roperly employed, summary judgment is a useful device for unmasking frivolous claims and putting a swift end to meritless litigation." *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir. 1980). However, granting summary judgment is appropriate only when there is no genuine issue as to any material fact, and the substantive law is in favor of the movant. 6 Moore's Federal Practice ¶ 56.-15[1.-0], at 56–391 to –395 (2d ed. 1981). On a motion for summary judgment, the court " 'cannot try issues of fact; it can only determine whether there are issues to be tried.' " *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978), *quoting American Mfrs. Mut. Ins. Co. v. American Broadcasting-Paramount Theatres, Inc.*, 388 F.2d 272, 279 (2d Cir. 1967). The party seeking summary judgment has the burden of demonstrating the absence of any material factual issue in dispute. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Heyman v. Commerce and Indus. Ins. Co.*, 524 F.2d 1317, 1320 (2d Cir. 1975).

■ In considering a motion for summary judgment, the Court must resolve ambiguities and draw all reasonable inferences in favor of the party against whom the summary judgment motion is made. *Unit-ed States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Heyman v. Commerce and Indus. Ins. Co., supra*, 524 F.2d at 1320. However, the adverse party "may not rest upon mere conclusory allegations or denials. The party opposing the motion must set forth 'concrete particulars' and cannot make a secret of his evidence, holding it close to his chest until the trial." *SEC v. Research Automation Corp., supra*, 585 F.2d at 33. He may not merely assert conclusions without supplying supporting arguments or facts in opposition to the motion. *Id.; see Donnelly v. Guion*, 467 F.2d 290, 293 (2d Cir. 1972). He must "bring to the district court's attention some affirmative indication that his version of relevant events is not fanciful." *Quinn v. Syracuse Model Neighborhood Corp., supra*, 613 F.2d at 445.

*Inadequate medical treatment.*—Plaintiff's claims against Drs. McMillian, Rigney, and Dyett, Superintendents Fogg, Ternullo, Dalsheim, Smith, and LeFevre, Commissioner Ward, Captain Sperbeck, and Corrections Officer Johnson are all based on his allegedly inadequate medical treatment. As discussed above, plaintiff must allege more than mere negligence to state a claim that his constitutional rights have been violated. *Estelle v. Gamble, supra*, 429 U.S. at 106, 97 S.Ct. at 292; *United States ex rel. Hyde v. McGinnis, supra*, 429 F.2d at 866. "A complaint under section 1983 based on inadequate medical treatment states a cause of action if it alleges conduct which 'shocks the conscience,' such as deliberate indifference to a prisoner's request for essential medical treatment." *Williams v. Vincent*, 508 F.2d 541, 544 (2d Cir. 1974). *See Arroyo v. Schaefer*, 548 F.2d 47, 49 (2d Cir. 1977) (plaintiff must show evil intent, recklessness, or deliberate indifference).

■ As this court observed in *Todaro v. Ward*, 431 F.Supp. 1129, 1132–33 (S.D.N.Y.), *aff'd*, 565 F.2d 48 (2d Cir. 1977), cases that address what constitutes deliberate indifference to a prisoner's medical needs generally fall into two categories. In the first category are cases which have held unconstitutional the denial or unreasonable delay

of access to medical personnel to a prisoner with a serious illness or injury. *See, e.g., Fielder v. Bosshard*, 590 F.2d 105 (5th Cir. 1979); *Westlake v. Lucas*, 537 F.2d 857 (6th Cir. 1976); *Corby v. Conboy*, 457 F.2d 251 (2d Cir. 1972). In the second category are cases in which prison personnel denied a prisoner the treatment prescribed by a physician. *See, e.g., Wilbron v. Hutto*, 509 F.2d 621 (8th Cir. 1975); *Martinez v. Mancusi*, 443 F.2d 921 (2d Cir. 1970), *cert. denied*, 401 U.S. 983, 91 S.Ct. 1202, 28 L.Ed.2d 335 (1971); *Derrickson v. Keve*, 390 F.Supp. 905 (D.Del.1975). Therefore, in order to state a claim of inadequate medical care under § 1983 against prison guards or officials, plaintiff must allege that his access to physicians for necessary medical care was unreasonably delayed or denied, or that prescribed medical treatment was not administered. *See Todaro v. Ward, supra*, 431 F.Supp. at 1133.

■ The treating physician may also be liable under § 1983 for his deliberate indifference to a prisoner's serious medical needs. *Estelle v. Gamble, supra*, 429 U.S. at 104, 97 S.Ct. at 291. The conduct alleged must be "repugnant to the conscience of mankind," *id.* at 105–06, 97 S.Ct. at 291–92, as the cases involving doctors' liability clearly demonstrate. *See, e.g., Williams v. Vincent, supra*, 508 F.2d at 543 (doctors chose "easier" treatment of discarding prisoner's ear and stitching stump rather than attempting to reattach ear); *Thomas v. Pate*, 493 F.2d 151, 158 (7th Cir.), *cert. denied*, 419 U.S. 879, 95 S.Ct. 143, 42 L.Ed.2d 119 (1974) (nurse injected prisoner with a drug, knowing prisoner was allergic to it, and doctor refused to treat prisoner's allergic reaction); *Martinez v. Mancusi, supra*, 443 F.2d at 923 (prison doctor refused to give prescribed painkiller to prisoner who had undergone operation, and otherwise ignored surgeons' instructions). Thus, a claim based solely on a doctor's misdiagnosis or faulty judgment, with no facts to support a charge of deliberate indifference on his part, is not cognizable under § 1983. *See Arroyo v. Schaefer, supra; DiLorenzo v. United States*, 496 F.Supp. 79 (S.D.N.Y. 1980); *Accardi v. United States*, 356

F.Supp. 218 (S.D.N.Y.1973). Similarly, a prisoner's disagreement with his prescribed treatment does not afford a basis for relief under § 1983. *See United States ex rel. Hyde v. McGinnis, supra; Sloan v. Zelker*, 362 F.Supp. 83 (S.D.N.Y.1973).

Plaintiff claims that Drs. McMillian, Rigney and Dyett violated § 1983 through their deliberate indifference to his serious medical needs. His claim against Dr. McMillian is based on the doctor's failure to diagnose and treat him for a heart attack he allegedly suffered in early January 1976, while at Fishkill. It is undisputed that Tomarkin reported to the medical facility at Fishkill on January 8, 1976, complaining of chest pains. During the next two days diagnostic tests, including an EKG, were performed on him. Dr. McMillian reviewed the EKG tracings on or about January 10 and arranged for Tomarkin's transfer to the Hospital for further tests. On January 12, 1976, plaintiff was transferred to the Hospital where he was seen in the emergency room. Further tests, including another EKG, were performed on Tomarkin at the Hospital. The emergency room doctor diagnosed Tomarkin as suffering from "pneumitis L Base and flu like syndrome," and concluded that there was no evidence of myocardial infarction and that Tomarkin most likely had a viral infection. Tomarkin was released from the Hospital and returned to Fishkill on January 12 with instructions to encourage fluids and continue benzlin and tetracycline.

Plaintiff does not allege that Dr. McMillian refused to treat him at all or that he refused medication or other treatment recommended by the Hospital doctor. In fact, he took the prescribed medication daily until he stopped of his own volition because he felt it wasn't doing any good. Deposition of Robert Tomarkin, taken January 29, 1979 ("Tomarkin Dep."), at 119–20. His complaint is that Dr. McMillian treated him in accordance with the Hospital's diagnosis when he knew or should have known that Tomarkin had suffered a heart attack. Supplemental Affidavit of Robert Tomarkin, sworn to November 13, 1981 ("Tomar-

kin Supp. Aff."), at 1–2. Moreover, Tomarkin claims that a memorandum dated January 22, 1976 from Dr. McMillian to Dr. Rigney, Regional Health Services Director, stating that the plaintiff had pleurisy, was a "deliberate falsification" that evidenced "such an indifference and hostility to [Tomarkin] as to indicate a desire that his heart attack should be fatal."[3] Tomarkin Supp. Aff. at 2.

■ Plaintiff's claims against Dr. McMillian cannot withstand defendants' motion for summary judgment. Even reading plaintiff's affidavits and complaint liberally in his favor, at most they charge Dr. McMillian with medical malpractice. Nothing in Tomarkin's allegations against McMillian "shock the conscience"; there are no facts from which the Court could infer any deliberate indifference to Tomarkin's serious medical needs. Certainly there is nothing in the memorandum to Dr. Rigney to support an allegation that Dr. McMillian was either deliberately indifferent or hostile to the plaintiff. And, as stated above, a charge of medical malpractice is not a cognizable claim under § 1983. In the absence of any particulars of incidents from which Dr. McMillian's hostile intent or deliberate indifference to Tomarkin's serious medical needs could be inferred, summary judgment in favor of Dr. McMillian is granted.

■ Plaintiff's claim against Dr. Rigney is based on the doctor's alleged failure to check on Dr. McMillian's conclusion, in his January 22, 1976 memorandum, that Tomarkin had not suffered a heart attack. Tomarkin argues that this evidences Dr. Rigney's "collaboration" in concealing from him the proper diagnosis of his condition. Tomarkin Supp. Aff. at 2. The Court is compelled to grant Dr. Rigney's motion for summary judgment on this claim. It is doubtful whether allegations of Dr. Rigney's failure to check Dr. McMillian's diagnosis even state a claim for medical malpractice, much less a claim that Dr. Rigney has violated plaintiff's constitutional rights. None of plaintiff's allegations concerning Dr. Rigney permit an inference of hostile intent, or of deliberate indifference to plaintiff's serious medical needs, either of which is a necessary component of an action under § 1983.[4] *See Williams v. Vincent, supra,* 508 F.2d at 546.

■ Plaintiff made no specific allegation in his complaint against Dr. Dyett, a physician at Ossining. Dr. Dyett, in his affidavit in support of defendants' motion for summary judgment, asserts that Tomarkin always received "competent and adequate" medical and dental care while at Ossining. He notes that Tomarkin appeared at sick call on a daily basis, with numerous complaints, many of which had no medical basis. Affidavit of Benjamin I. Dyett, sworn to October 9, 1981, ¶¶ 4, 6. Plaintiff, in response, asserts that he "vainly [sought] medical treatment" at Ossining, but that Dr. Dyett "was as determined as the other physicians to facilitate his physical collapse." He further charges Dr. Dyett with "attempts to picture [him] as an irritating hypochondriac." Tomarkin Supp. Aff. at 2–3. However, he alleges no specific instances in which he was denied medical treatment by Dr. Dyett. His vague, conclusory allegations against Dr. Dyett are an insufficient response to defendants' motion for summary judgment. Plaintiff has failed to set forth the requisite "concrete particulars" of his claim, and consequently summary judgment in favor of Dr. Dyett is granted.

---

**3.** In fact, the memorandum, attached to Tomarkin's Supplemental Affidavit, states that "[t]he physician [at the Hospital] reported that he found a normal EKG and a negative chest x-ray. He had no better explanation for his symptoms than that of a viral infection and he suggested that we continue with Tetracycline. He felt that there was no evidence of a myocardial infarction." After discussing the diminu-

tion of Tomarkin's symptoms subsequent to his release from the Hospital, Dr. McMillian concluded that "[t]he diagnosis in this case is not entirely clear, however, I think we can be sure he did not have a myocardial infarction."

**4.** Moreover, the doctrine of respondeat superior is not applicable in an action for damages pursuant to § 1983. See discussion, *infra.*

■ Plaintiff also claims that Ternullo, Fogg, Dalsheim, Smith and LeFevre, superintendents of the various correctional facilities at which he was incarcerated,[5] and Ward, then Commissioner of the Department of Correctional Services, violated § 1983 by their deliberate indifference to his serious medical needs. Because respondeat superior is not applicable in an action for damages pursuant to § 1983, *Duchesne v. Sugarman*, 566 F.2d 817, 830 (2d Cir. 1977); *Arroyo v. Schaefer, supra*, 548 F.2d at 51; *Johnson v. Glick*, 481 F.2d 1028, 1033–34 (2d Cir.), *cert. denied*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973), a claim under § 1983 against a prison official requires an allegation of his direct and personal responsibility for the purportedly unconstitutional conduct. *Williams v. Vincent, supra*, 508 F.2d at 546; *Johnson v. Glick, supra*, 481 F.2d at 1034. An allegation of personal responsibility may be based on the official's participation in the unconstitutional conduct, or on his awareness of, or acquiescence in, unconstitutional conduct of his subordinates. *See McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977), *cert. denied*, 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978); *Duckett v. Ward*, 458 F.Supp. 624, 627 (S.D.N.Y.1978); *Taylor v. Clement*, 433 F.Supp. 585, 587 (S.D.N.Y. 1977).

■ Plaintiff claims that Ternullo was deliberately indifferent to his serious medical needs. Specifically, he alleges that Ternullo, aware of his condition, visited him when he was in solitary confinement at Fishkill some time after his alleged heart attack in January 1976, but ignored his complaints of chest pains and refused him adequate medical treatment. Affidavit of Robert Tomarkin, sworn to September 29, 1981 ("Tomarkin Aff."), ¶ 6. Plaintiff's claim that he personally confronted Ternullo with his complaint alleges the requisite personal involvement for a § 1983 claim, although his allegations concerning the inadequacy of medical treatment are vague. He does not specifically allege that either medical personnel or prescribed treatment was unavailable to him in solitary. Nevertheless, while it is clear from the papers that plaintiff generally had access to medical personnel, and in fact admits he attended sick call with great regularity, see, *e.g.* Tomarkin Dep. at 121–22; Deposition of Robert Tomarkin, taken March 9, 1979, at 40a–41a, the availability of medical services to him in solitary is unclear. If Tomarkin was denied medical attention for a serious illness while in solitary, and Ternullo was aware of such denial, then Ternullo may be liable under § 1983. However, if Tomarkin was receiving medical attention, and his complaints of its inadequacy are based on doctors' misdiagnoses or faulty judgments, Ternullo may not be held liable, as he was not responsible for second guessing his medical staff. *See Mitchell v. Hendricks*, 431 F.Supp. 1295, 1302 (E.D.Pa.1977). Ternullo, for his part, claims that at Fishkill Tomarkin was always provided with excellent care and treatment.[6] Affidavit of Vito

---

5. Ternullo, Dalsheim, and Smith were superintendents of the Fishkill, Ossining and Attica Correctional Facilities, respectively, during the period Tomarkin was incarcerated at those facilities. Fogg was superintendent or deputy superintendent of Greenhaven while Tomarkin was incarcerated there, except for the period from July to October of 1975, when LeFevre was superintendent of Greenhaven.

The name "John" LaValle, and not LeFevre, appeared on the caption of the complaint and in its description of parties. Defendants have treated LeFevre as a named defendant, since he was served and requested representation. G. E. LaVallee, who was superintendent of the Clinton Correctional Facility while Tomarkin was incarcerated there, was never served and consequently this Court dismissed the complaint with respect to him in a Memorandum and Order dated July 30, 1980.

6. Many of the affidavits in support of defendants' motion for summary judgment allege only that, to the affiant's knowledge, Tomarkin always received adequate medical care, and do not address the incidents Tomarkin has particularized in his affidavits. Nevertheless, defendants' affidavits are satisfactory for purposes of their motion, since the allegations in the complaint were so vague as to make it difficult for many of the defendants to discern precisely what conduct was being challenged. Thus, the burden is on the plaintiff to particularize his complaint and "set forth specific facts showing that there is a genuine issue for trial." Rule 56(e).

Ternullo, sworn to August 21, 1981, ¶ 5. Thus, there remain genuine issues of material fact; plaintiff should be permitted to prove, at trial, that he was denied medical treatment for a serious illness with Ternullo's knowledge.

Concerning defendants Fogg, Dalsheim, Smith, LeFevre, and Ward, plaintiff alleges little more than that they were personally involved with him and were deliberately indifferent to his serious medical needs. In support of these vague allegations plaintiff offers letters and memoranda written by them to demonstrate their personal contact with him. Certainly the letters and memoranda demonstrate that these defendants knew of Tomarkin or had personal contact with him. However, since the plaintiff has not alleged any particulars concerning their involvement in or awareness of an unconstitutional denial of medical treatment, the issue is whether the letters demonstrate such involvement or awareness.[7]

■ In his affidavits and complaint, plaintiff alleged only one specific instance in which he was denied medical treatment while at Greenhaven, where Fogg was superintendent. He charged that he was refused "proper medical treatment" for injuries suffered when he was assaulted on April 25, 1977 by an inmate named Ramirez. Complaint ¶¶ 18, 19. Since none of the letters plaintiff offers in support of his claim against Fogg allude to an assault, and all are dated prior to February 1977, they provide no basis for inferring that Fogg was aware of the alleged refusal of proper medical treatment. Only two of the letters, both written by Fogg, mention Tomarkin's medical condition: one, dated November 1, 1976, directed a senior correction counselor to find out from Tomarkin how his programs could best be adjusted to stop any

further mental or physical deterioration; the second, dated January 27, 1977 and directed to Bruce Hofstetter, Esq., stated that Tomarkin was under constant medical care and was receiving medication for his heart condition and to help him sleep. The second letter noted, however, that Tomarkin had demanded Valium and Demoral, which had been denied because they are addictive and had not been prescribed for him.

Neither of these letters provides sufficient concrete particulars of instances in which Tomarkin was denied medical treatment to warrant a denial of summary judgment. Defendants' motion is granted with respect to plaintiff's claims against Fogg for inadequate medical treatment.

■ Plaintiff has alleged no specific instance in which he was denied medical treatment at Ossining. Only two of the memoranda he submits in support of his claim against Dalsheim, both written by Dalsheim, refer to Tomarkin's medical treatment. One, dated November 17, 1977 and directed to Tomarkin, acknowledged receipt of Tomarkin's note of November 15, 1977 regarding dental treatment, and stated that the medical staff was arranging another dental appointment. The second, dated November 28, 1977 and directed to the Inmate Grievance Resolution Committee at Ossining, stated that Dalsheim agreed with the Committee that dental services should be provided to Tomarkin, and informed the Committee that the medical staff had been directed to reschedule Tomarkin's dental appointment. Neither of these memoranda provides the basis for a claim that Tomarkin was denied adequate medical care at Ossining, or that Dalsheim acquiesced in any such denial. Defendants'

---

7. Thus, many of the letters and memoranda supplied by the plaintiff have nothing to do with a claim of inadequate medical care. Some address completely different complaints, like Tomarkin's requests for transfers (*e.g.*, letters dated August 28, October 14, and November 24, 1975 from Austin Clarke to Tomarkin); some are too ambiguous to permit an inference that they were written in response to a complaint by Tomarkin concerning his medical treatment (*e.g.*, memorandum dated June 1, 1977 from Smith to Tomarkin, directing Tomarkin to see Smith as he walked through the corridors if Tomarkin wanted to speak to Smith about something); and some are totally innocuous (*e.g.*, memorandum dated August 23, 1977 from Smith to Tomarkin, in which Smith noted that Tomarkin would soon be leaving the facility and wished him good luck).

motion for summary judgment on this claim is granted.

Plaintiff has alleged no specific instance in which he was actually denied access to medical personnel or prescribed medication while at Attica, where Smith was superintendent.[8] Only two of the letters he submits in support of his claim against Smith mention medical treatment; both simply directed Tomarkin to contact the medical and/or dental staff directly with any problems he had. These letters provide no concrete particulars of instances in which Tomarkin was denied medical treatment at Attica, and no support for an allegation of Smith's acquiescence in any such denial. The Court is compelled to grant summary judgment in favor of defendant Smith.

Plaintiff has alleged no specific instance in which he was denied medical care at Greenhaven during the period when LeFevre was there. The only memorandum mentioning Tomarkin's medical condition that plaintiff has submitted in support of his claim against LeFevre is dated July 18, 1975 from Austin Clarke, Executive Aide to Commissioner Ward, to Ronald Sinzheimer, Assistant Counsel in the Office of the Lieutenant Governor ("cc Superintendent LeFevre"). Regarding Tomarkin's medical status, Clarke stated:

> From the outset, Mr. Tomarkin has made complaints regarding the conditions of his confinement. As a result, he has been seen frequently by psychiatrists and other staff members including two professional staff members assigned to the Inspector General of the Department of Correctional Services, our internal investigatory and auditing unit. His medical complaints have also received prompt response from Departmental physicians. . . .

The Department will continue to respond to Mr. Tomarkin's complaints, and he will promptly receive medical treatment and such other attention as is indicated.

This memorandum does not contain any particulars about the times and circumstances under which Tomarkin claims he was denied medical treatment during the period that LeFevre was at Greenhaven, nor does it provide any basis for a claim that LeFevre acquiesced in any such denial. The memorandum was apparently written only a day after LeFevre went to Greenhaven. Therefore, summary judgment is granted in favor of defendant LeFevre.

Plaintiff has submitted several letters in support of his claim that Commissioner Ward was directly involved in denying him adequate medical care. Only two relate to Tomarkin's medical complaints. One is the memorandum from Austin Clarke to Ronald Sinzheimer, discussed above. The second is a letter dated May 9, 1975, to Tomarkin from James Heim, Administrative Assistant in the Department of Correctional Services, written in response to a letter from Tomarkin to Ward. The letter said "Your medical problems, as stated, are of concern to us. For that reason, I am forwarding a copy of your letter and a copy of my reply to you to Dr. Ian Louden, Assistant Commissioner for Health Services. I am sure that he will initiate appropriate action on your behalf."

Evidently, Tomarkin wrote to Ward prior to May 9, 1975 about a medical problem. His complaint contains allegations of two specific instances in which he was denied medical treatment prior to May 1975: he alleged that in February 1975, while incarcerated at Clinton, he developed internal bleeding after being denied medication; and he alleged that in January 1975, at Clinton, he was refused treatment for a tooth infection. Complaint ¶¶ 7, 10.

---

**8.** Tomarkin does make a vague allegation in his affidavit that Smith ignored his complaints of chest pains. Tomarkin Aff. ¶ 8. However, he does not allege that Smith ever denied him medical treatment, nor does he allege circumstances (*e.g.*, solitary confinement) from which such denial might be inferred, despite Smith's allegations that he never interfered with inmates' medical care, and that he was positive that Tomarkin received all required medical attention at Attica. Affidavit of Harold Smith, sworn to August 19, 1981, ¶¶ 5, 6. Moreover, it is clear from Tomarkin's deposition that he had access to Attica physicians. Deposition of Robert Tomarkin, taken March 9, 1979, at 24C–25C. Thus, plaintiff's allegation does not present a triable issue of fact.

■ One could reasonably infer from the May 9, 1975 letter that Tomarkin complained to Ward about one or both of these incidents. Although it does not appear from either the letter or the memorandum that Ward was deliberately indifferent to Tomarkin's serious medical needs, or that he acquiesced in the allegedly unconstitutional conduct, the letter provides sufficient evidence of Ward's awareness of that conduct to warrant denial of defendants' motion for summary judgment on this claim.

■ Tomarkin also charges defendants Sperbeck and Johnson with deliberate indifference to his serious medical needs. He alleges that Johnson, a corrections officer at Fishkill, "knowingly refused to let [him] see a doctor for more than twenty-four (24) hours after [he] suffered his first heart attack, despite many complaints of chest pains." Tomarkin Aff. ¶ 15. Johnson claims never to have mistreated the plaintiff or to have violated his civil rights. Affidavit of Van Johnson, sworn to October 21, 1981, ¶ 2. Since plaintiff's allegations concerning Johnson's willful denial to him of medical treatment state a claim under § 1983, there remain genuine issues of material fact to be resolved at trial. Defendants' motion for summary judgment on the claim against Johnson is denied.

■ Tomarkin alleges that in May 1976, Sperbeck, a corrections officer at Greenhaven, "with deliberate indifference to his serious medical needs, ordered [him] into solitary confinement when he knew or had reason to know that [he] had a severe heart condition." Tomarkin Aff. ¶ 17. Plaintiff does not allege particulars concerning the conditions in solitary or the inadequacy of his medical treatment there. In his deposition, he stated that he was removed from solitary confinement in early June and taken to the infirmary, and subsequently to the Albany Medical Center where he was informed that he had suffered heart damage. Tomarkin Dep. at 137–43. It is unclear from the papers whether medical care actually was available to Tomarkin throughout his time in solitary confinement. As the Court discussed above, with respect to the claims against defendant Ternullo, plaintiff must have an opportunity to prove at trial that while he was in solitary confinement he was denied access to medical personnel for serious medical needs, or that the conditions of his solitary confinement were inconsistent with a prescribed course of treatment. To establish Sperbeck's liability under § 1983, plaintiff must also prove that Sperbeck was aware of his medical condition and knew that he would be denied medical attention or prescribed treatment in solitary, and thus acted with deliberate indifference to Tomarkin's serious medical needs in ordering him there. Defendants' motion for summary judgment on this claim against Sperbeck is denied.

*Assault.*—Plaintiff's claims against corrections officers Tanner, Hues, Albritton, LaPiere, and Spano stem from physical assaults alleged to have occurred at various times during plaintiff's incarceration. Not every allegation that force was used on a prisoner states a claim for relief under the Constitution. *See Hernandez v. Lattimore*, 612 F.2d 61, 67 (2d Cir. 1979); *Arroyo v. Schaefer, supra*, 548 F.2d at 50. As the Second Circuit stated in *Johnson v. Glick, supra*, 481 F.2d at 1033:

The management by a few guards of large numbers of prisoners, not usually the most gentle or tractable of men and women, may require and justify the occasional use of a degree of intentional force. Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights. In determining whether the constitutional line has been crossed, a court must look to such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of the injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.

Specifically, Tomarkin alleges that he suffered severe neck, back, and rib injuries as a result of an assault by defendant Hues on

September 8, 1975, at Greenhaven; that he suffered severe back and rib injuries as a result of an assault by defendants Albritton, LaPiere, and Tanner on December 12, 1976, at Greenhaven; and that he suffered serious head injuries when defendant Spano knocked him down some stairs on December 23, 1977, at Ossining. Tomarkin Aff. ¶¶ 14, 16, 18. Tomarkin further alleges that all three assaults were without provocation and that the force used was excessive and not necessary to maintain order. *Id.* Tanner, Albritton, LaPiere, and Spano [9] admit using force on Tomarkin on the occasions specified, but they argue that the use of force was provoked by the plaintiff himself, that it was necessary to maintain order, and that the force used was not excessive.

Plaintiff's conclusory allegations that the assaults of December 12, 1976 and December 23, 1977 were without provocation would not, without more, preclude a grant of summary judgment with respect to these claims, in light of defendants' more specific allegations concerning plaintiff's actions in precipitating the confrontations, and the supporting disciplinary reports, none of which Tomarkin has addressed in his papers. However, efforts to maintain discipline cannot justify the use of excessive force. *See Vargas v. Correa*, 416 F.Supp. 266 (S.D.N.Y.1976). Tomarkin's allegations that excessive force was used, coupled with his allegations of resulting injuries, present genuine issues of material fact that cannot be disposed of on a motion for summary judgment. *See Martinez v. Rosado*, 614 F.2d 829 (2d Cir. 1980); *Stinson v. Sheriff's Dep't of Sullivan County*, 499 F.Supp. 259 (S.D.N.Y.1980).

Additional claims against defendants Sperbeck, Albritton, LaPiere, Hues, and Fogg, stem from an alleged assault on the plaintiff by another inmate at Greenhaven. Plaintiff is entitled to relief under § 1983 for an assault by a fellow inmate if he can show purposeful acts on the part of prison officials, or facts from which their deliberate indifference to a threat to his safety could be inferred. *See Holmes v.*

*Goldin*, 615 F.2d 83 (2d Cir. 1980). The complaint alleges that "[w]hile incarcerated at Greenhaven, plaintiff was assaulted by an inmate named 'John' Ramirez. Said inmate was a mental observation patient." Complaint ¶ 18. Plaintiff's affidavit in opposition to defendants' motion for summary judgment is more specific. He alleges that Fogg introduced into his cell an inmate who had been released from Matawan Hospital for the criminally insane; that the inmate was given a baseball bat by a guard; and that Sperbeck, Albritton, LaPiere, and Hues "allowed said inmate to smash [plaintiff's] teeth with the bat, causing [plaintiff] severe injury." Tomarkin Aff. ¶ 19.

Although the allegations against these defendants are somewhat vague, they do, liberally construed, state a claim that cannot be resolved on a motion for summary judgment. There remain triable issues of fact concerning whether Fogg purposely introduced into plaintiff's cell an inmate whom he knew or should have known to be dangerous, and whether the corrections officers knew or should have known that Ramirez had access to plaintiff's cell, that he was potentially dangerous, and that he had a baseball bat. Therefore, summary judgment is denied on this claim.

Finally, defendants are granted summary judgment on plaintiff's claim that they failed to comply with various state court orders to provide him with adequate medical care and to release him for medical treatment. The only two orders which plaintiff specifically cited were reversed, *see Tomarkin v. Bombard*, 56 A.D.2d 881, 392 N.Y.S.2d 478 (1977), and plaintiff has alleged no additional facts in support of this claim.

*Conclusion*

The Hospital's motion for judgment on the pleadings is granted, and defendants' motion for summary judgment is granted with respect to plaintiff's claims against defendants Dyett, Rigney, McMillian, Dalsheim, Smith, and LeFevre, and with respect to claims against Fogg for inadequate

---

**9.** Defendant Hues did not submit an affidavit in support of the motion for summary judgment.

medical treatment. Summary judgment is denied with respect to plaintiff's claims against defendants Ternullo, Ward, Johnson, Sperbeck, Albritton, LaPiere, Tanner, Hues, and Spano, and with respect to claims against Fogg arising from plaintiff's assault by a fellow inmate.

The parties are directed to prepare and submit an amended Pre-Trial Order in conformity with this Opinion on or before June 1, 1982.

So ordered.