72 F.Supp.2d 24 (1999)
Jose NUNEZ, Plaintiff,
v.
Christopher HORN, M.D., Defendant.
No. 95-CV-1703.
United States District Court, N.D. New York.
October 29, 1999.
*25 Jose Nunez, Ray Brook, NY, pro se.
Martin, Ganotis, Brown, Mould & Currie, P.C., DeWitt, NY, Thomas Currie, of counsel, for Defendant.

MEMORANDUM-DECISION AND ORDER
HURD, District Judge.

I. INTRODUCTION

Plaintiff Jose Nunez ("Nunez" or "plaintiff") brings this action pursuant to 42 U.S.C. § 1983, alleging that defendant Dr. Christopher Horn ("Dr. Horn" or "defendant") violated his Eighth Amendment rights in connection with medical treatment plaintiff received while an inmate at Ray Brook Federal Correctional Facility ("Ray Brook"). Defendant has moved for summary judgment. Plaintiff opposes.

*26 II. FACTS

In 1989, three years prior to his incarceration, plaintiff fractured his left elbow when he fell from a horse. Plaintiff did not receive treatment for this injury and his elbow healed abnormally as a result. After arriving at Ray Brook in 1992, plaintiff was examined by the defendant, an orthopedic surgeon who provides medical services to inmates referred by physicians employed by the Federal Bureau of Prisons. While plaintiff had limited range of motion, he had functional use of his left elbow and reported only mild pain. Dr. Horn initially treated Nunez conservatively.
Plaintiff increasingly complained of pain, crepitus, and locking. X-rays indicated a possible loose body or bone chip in the elbow. Dr. Horn sought and received permission to perform arthroscopic surgery in order to attempt to alleviate the pain, crepitus, and locking that Nunez was experiencing. On August 4, 1993, defendant performed the surgery at Alice Hyde Hospital in Malone, New York. He found no loose body or bone chip, but removed synovial and scar tissue. Dr. Horn observed, but did not remove, a bony block which prevented plaintiff from having full range of motion in his elbow. After the surgery, plaintiff's range of motion remained approximately the same, but he experienced less pain.
Plaintiff commenced this action, contending that Dr. Horn's failure to remove the bony block from his left elbow and failure to provide proper pain medication violated his Constitutional rights under the Eighth Amendment.

III. DISCUSSION

A. Summary Judgment Standard

Summary judgment must be granted when the pleadings, depositions, answers to interrogatories, admissions, and affidavits show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Lang v. Retirement Living Pub. Co., 949 F.2d 576, 580 (2d Cir.1991). The moving party carries the initial burden of demonstrating an absence of a genuine issue of material fact. Fed.R.Civ.P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Thompson v. Gjivoje, 896 F.2d 716, 720 (2d Cir.1990). Facts, inferences therefrom, and ambiguities must be viewed in a light most favorable to the nonmovant. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); Project Release v. Prevost, 722 F.2d 960, 968 (2d Cir.1983).
When the moving party has met the burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., 475 U.S. at 586, 106 S.Ct. 1348. At that point, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56: Liberty Lobby Inc., 477 U.S. at 250, 106 S.Ct. 2505; Matsushita Elec. Indus. Co., 475 U.S. at 587, 106 S.Ct. 1348. To withstand a summary judgment motion, evidence must exist upon which a reasonable jury could return a verdict for the nonmovant. Liberty Lobby, Inc., 477 U.S. at 248-249, 106 S.Ct. 2505; Matsushita Elec. Indus. Co., 475 U.S. at 587, 106 S.Ct. 1348. Thus, summary judgment is proper where there is "little or no evidence ... in support of the non-moving party's case." Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223-1224 (2d Cir.1994) (citations omitted).

B. Whether Defendant Acted Under Color of State Law

"[I]n any § 1983 action the initial inquiry must focus on ... (1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person *27 of the rights, privileges, or immunities secured by the Constitution or laws of the United States." Parratt v. Taylor, 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), overruled on other grounds by Daniels v. Williams, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); West v. Atkins, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988); Bryant v. Maffucci, 923 F.2d 979, 982-83 (2d Cir.), cert. denied, 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991). Therefore, in order to prevail on his motion, the defendant must prove either that he did not deprive plaintiff of a federal statutory or Constitutional right by his actions, or that, notwithstanding his alleged actions, he did not act under color of state law.
In order to act under color of state law, a person must have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." Polk County v. Dodson, 454 U.S. 312, 317-18, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981)(quoting United States v. Classic, 313 U.S. 299, 326, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941)). Similarly, as is the case in the context of the Fourteenth Amendment's state action requirement, a deprivation of a federal or constitutional right is actionable pursuant to § 1983 when the deprivation was caused "by the exercise of some right or privilege created by the State ... or by a person for whom the State is responsible." Lugar v. Edmondson Oil Co., 457 U.S. 922, 937, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982).
The crucial inquiry in determining whether a physician who provides medical services to inmates is a state actor for purposes of § 1983, is the relationship among the State, the physician, and the plaintiff. West, 487 U.S. at 56, 108 S.Ct. 2250. In West, the United States Supreme Court held that the defendant-physician who had contracted with the state to furnish medical services within the confines of the prison to inmates of state-prisons, was acting "under color of state law for purposes of § 1983" when he treated the plaintiff-inmate. Id. at 57, 108 S.Ct. 2250. The Supreme Court found that the state was affirmatively obligated to provide medical care to the inmate, it had delegated that function to an otherwise private physician, and the physician voluntarily assumed that obligation by contract. Id. at 56, 108 S.Ct. 2250.
The instant case, however, is distinguishable from the factual setting in West. First, the physician in West treated the plaintiff-inmate in the prison hospital, subject to all of the pressures and constraints resulting from security concerns, while the defendant in this case freely performed his medical duties in a much more physician-controlled environment. "Unlike the situation confronting free patients, the non-medical functions of prison life inevitably influence the nature, timing, and form of medical care provided to inmates such as [the plaintiff]." Id. at 57 n. 15, 108 S.Ct. 2250. Moreover, the physician in West had contracted with the state to provide medical care to inmates in a state-prison hospital. Id. at 54, 108 S.Ct. 2250. Here, however, Dr. Horn was not employed by the Bureau of Prisons, nor was he under contract with the state to render medical services to prison inmates. Consequently, plaintiff has not shown that defendant in this case acted under color of state law.
Even assuming, arguendo, that defendant did act under color of state law, plaintiff has nonetheless failed to come forward with facts demonstrating a violation of his Eighth Amendment right to adequate medical treatment.

C. Eighth Amendment Claim

To state a claim under § 1983 based on inadequate medical treatment, plaintiff must allege that defendant acted with "deliberate indifference to [a] serious medical need[]." Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); see also Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir.1994), cert. denied sub *28 nom. Foote v. Hathaway, 513 U.S. 1154, 115 S.Ct. 1108, 130 L.Ed.2d 1074 (1995). To allege deliberate indifference, plaintiff must assert facts establishing that either his access to physicians for necessary medical care was unreasonably delayed or denied, or that prescribed medical treatment was withheld by a defendant for the sole purpose of causing plaintiff unnecessary pain. See Gill v. Mooney, 824 F.2d 192, 196 (2d Cir.1987); see also Tomarkin v. Ward, 534 F.Supp. 1224, 1230 (S.D.N.Y.1982)(citing Todaro v. Ward, 431 F.Supp. 1129, 1133 (S.D.N.Y.), aff'd, 565 F.2d 48 (2d Cir.1977)). Negligence or malpractice in providing medical care cannot establish a claim under § 1983. See Estelle, 429 U.S. at 105-06, 97 S.Ct. 285; Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir.1993). The Supreme Court stated, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106, 97 S.Ct. 285.
Assuming, without deciding, that plaintiff had a "serious medical need," he cannot demonstrate that the defendant acted with the intent to cause plaintiff pain. Plaintiff was referred to Dr. Horn, thoroughly examined, and initially treated conservatively because he had functional use of his left arm. Plaintiff's pre-operative range of motion varied from 85-90 degrees flexion and 20-45 degrees extension. (See Horn Aff. Ex. H at 50, 55.) X-rays were taken after Nunez increasingly complained of pain, crepitus, and locking. Contrary to plaintiff's unsupported allegations, the medical records show that Dr. Horn advised Nunez that arthroscopic surgery would not increase his range of motion, but might relieve the pain and other symptoms. Id. at 12, 43, 44, 47.
Plaintiff requested "big surgery" to return the functioning of his elbow to normal. Id. at 37. However, Dr Horn's notes reveal that such surgery was not indicated because of plaintiff's young age, the degree of functionality he already enjoyed, and the fact that such surgery was not guaranteed to be successful. Id. at 35, 42. Dr. Horn's assessment in this respect is supported by the opinions of Dr. David Hootnick, (Hootnick Aff. ¶ 34), and Dr. William Bowen. (Horn Aff. Ex. I at 114.)
Plaintiff's post-operative range of motion was approximately 80-90 degrees flexion and 30 degrees extension. Id. at 3, 6. Thus, as Dr. Horn expected, plaintiff's range of motion did not significantly improve, nor did it worsen. However, plaintiff exhibited less pain when performing range of motion movements.
With respect to post-operative pain management, plaintiff complained of mild pain, and no swelling or infection was observed. Plaintiff requested a muscle relaxant by name for his joint pain, but his request was denied. Instead, plaintiff was prescribed medications such as Motrin, Tylenol, and Ibuprofen, and was administered an injection of Xylocaine and Depo-Medrol. Id. at 4, 36.[1]
The evidence clearly shows that the treatment provided by the defendant was reasonable and was not administered with the intent to unnecessarily and wantonly inflict pain upon the plaintiff. Plaintiff's claim is essentially grounded upon his complaint that the defendant did not remove the bony block which would have restored his range of motion. However, as discussed above, plaintiff was advised that arthroscopic surgery could not accomplish this result. In addition, Dr. Horn determined that plaintiff was not a candidate for the major surgery necessary to return his elbow to normal. Such a decision, which is supported by the opinions of Dr. Hootnick and Dr. Bowen, is within the purview of the defendant's medical judgment, and at *29 best, may be considered a negligent error in judgment. However, mere negligence does not give rise to a Constitutional violation under the Eighth Amendment.
Accordingly, it is
ORDERED, that defendant's motion for summary judgment is GRANTED, and the complaint is dismissed in its entirety.
IT IS SO ORDERED.
NOTES
[1] Depo-Medrol is an anti-inflammatory. See Physicians' Desk Reference 2472 (53d ed.1999). Xylocaine is an anesthetic. Id. at 603-04.