Arthur LAGRANGE, Plaintiff,

v.

Michael RYAN, Individually and in is official capacity as an officer of the Kingston City Police; City of Kingston; Paul Tsui, Individually and in his official capacity as an Assistant District Attorney of Ulster County; John Doe, Individually and in his official capacity as an officer of the Kingston City Police, Defendants.

No. 99–CV–2133.

United States District Court,
N.D. New York.

May 16, 2001.

Ricken, Goldman, Sussman & Blythe, Kingston, NY, Alan N. Sussman, of counsel for Plaintiff.

Kerr & Weiss, Michael Ryan, New Paltz, NY, Marsha Solomon Weiss, of counsel, for City of Kingston and Joh Doe.

Cook, Tucker, Netter & Cloonan, P.C., Kingston, NY, Robert E. Netter, of counsel, for Defendant Paul Tsui.

## *MEMORANDUM–DECISION AND ORDER*

HURD, District Judge.

### I. *INTRODUCTION*

Plaintiff Arthur LaGrange ("LaGrange" or "plaintiff") commenced the instant action pursuant to 42 U.S.C. §§ 1983 and 1988 alleging violations of his Fourth, Fifth, Eighth, and Fourteenth Amendment rights. Plaintiff also asserts pendent state law claims for assault, battery, false arrest, unlawful imprisonment, malicious prosecution, and conversion. He seeks compensatory and punitive damages. Defendants, City of Kingston police officer Michael Ryan ("Officer Ryan"), City of Kingston (the "City"), and John Doe[1] (collectively referred to in this opinion as "the defendants") have moved for summary judgment, pursuant to Fed.R.Civ.P. 56.[2] Plaintiff opposes. This matter was submitted for decision without oral argument.

### II. *FACTS*

Plaintiff, almost 83 years old at the time of the events alleged in the complaint, and his wife Thelma LaGrange ("Mrs.La-Grange"), then 76 years old, resided at Fairview Gardens Apartments in Kingston, New York. In the spring of 1999, Victoria Castiglione ("Castiglione") and Byron Frayne ("Frayne") moved into the apartment above them. Plaintiff began to complain to management that Frayne made excessive noise at late hours. When his complaints failed to resolve the problem to his satisfaction, Mrs. LaGrange contacted the Kingston Police Department on May 8, 1999. Castiglione and Frayne also registered complaints with the police department in late May and June of 1999 against LaGrange, alleging that he followed Frayne through the streets of Kingston and threatened to shoot Frayne if he continued making excessive noise.

On June 29, 1999, Frayne requested a police escort to the apartment while he and Castiglione removed some personal belongings. Officer Ryan responded. At 1:30 a.m., he met Castiglione and Frayne in the parking lot of Fairview Gardens Apartments, where they advised him of the ongoing problem between themselves and Mr. and Mrs. LaGrange. Officer Ryan escorted them to their door and

---

1. During the course of discovery, it was revealed that "John Doe" is in fact City of Kingston police officers John Tremper ("Sergeant Tremper") and Douglas Gaston ("Lieutenant Gaston").

2. Defendant Paul Tsui has not filed a motion. Therefore, any facts and claims pertaining to him are not discussed in this opinion.

waited outside. At this point the stories diverge.

Plaintiff alleges that at approximately 1:30 a.m., he awoke from sleeping when he heard knocking at his front door. He grabbed his pistol and inserted a clip into it on the way to the door. He held the gun down against his hip and opened the door partially to see who was there. He saw Officer Ryan standing at the door with a gun aimed at his face. Officer Ryan ordered LaGrange to put his gun down, which he did. Plaintiff then claims that Officer Ryan grabbed him, pushed him down to the ground, put his knee over the middle of his back, and handcuffed him with his hands behind his back. He remained on the ground for approximately half an hour. He alleges that while he was being placed into the police car, he told Officer Ryan that he needed his medication because he could not breathe, but Officer Ryan replied that he did not need it.

According to Officer Ryan, while waiting outside for Castiglione and Frayne, he saw a door open off to his right and plaintiff was standing in the doorway with a gun. He ordered LaGrange to put the gun down, which he did. Ryan then claims he ordered the plaintiff to get down on the ground. When he failed to respond, Officer Ryan pushed him down, placed one hand on his back, and handcuffed him. He then radioed for backup and EMTs.

At approximately 1:41 a.m., EMTs arrived and evaluated LaGrange in the back of Officer Ryan's police car. Backup officers arrived and asked Mrs. LaGrange if there were any other weapons in the apartment. She acknowledged that there was also a rifle and a shotgun, and indicated where they were located. The apart-

ment was searched and the guns were retrieved from the bedroom. The officers also secured a bag of cleaning supplies, ammunition, and the plaintiff's driver's license and pistol permit.

Plaintiff was transported to the police station and processed by Officer Ryan. The officer in charge at the time LaGrange was brought in, Sergeant Tremper,[3] allowed him to choose between being placed in a cell or in the booking room until his arraignment that morning. He chose the booking room, where he was secured to a bench by one handcuff. He remained there until his arraignment at approximately 9:00 a.m.

LaGrange was arraigned before a city court judge on the charge of criminal possession of a weapon in the second degree.[4] Following arraignment, the judge directed that the plaintiff be taken to the hospital and return to appear before him the next day. LaGrange was evaluated in the emergency room and admitted to the hospital. He also received a psychological evaluation. He appeared in court the next day, when the judge released him on his own recognizance and ordered him to report to probation weekly and submit to an examination by Ulster County Mental Health. On October 5, 1999, a grand jury returned a no bill.

## III. DISCUSSION

### A. *Summary Judgment Standard*

Summary judgment must be granted when the pleadings, depositions, answers to interrogatories, admissions, and affidavits show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56;

---

**3.** Lieutenant Gaston came on duty later as officer in charge of the day shift.

**4.** *See* N.Y. Penal Law § 265.03 (McKinney 1999).

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Lang v. Retirement Living Pub. Co.,* 949 F.2d 576, 580 (2d Cir.1991). The moving party carries the initial burden of demonstrating an absence of a genuine issue of material fact. Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Thompson v. Gjivoje,* 896 F.2d 716, 720 (2d Cir.1990). Facts, inferences therefrom, and ambiguities must be viewed in a light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Project Release v. Prevost,* 722 F.2d 960, 968 (2d Cir.1983).

When the moving party has met the burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.,* 475 U.S. at 586, 106 S.Ct. 1348. At that point, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56: *Liberty Lobby Inc.,* 477 U.S. at 250, 106 S.Ct. 2505; *Matsushita Elec. Indus. Co.,* 475 U.S. at 587, 106 S.Ct. 1348. To withstand a summary judgment motion, evidence must exist upon which a reasonable jury could return a verdict for the nonmovant. *Liberty Lobby, Inc.,* 477 U.S. at 248–49, 106 S.Ct. 2505; *Matsushita Elec. Indus. Co.,* 475 U.S. at 587, 106 S.Ct. 1348. Thus, summary judgment is proper where there is "little or no evidence ... in support of the non-moving party's case." *Gallo v. Prudential Residential Servs.,* 22 F.3d 1219, 1223–24 (2d Cir.1994) (citations omitted).

## B. *False Arrest/Unlawful Imprisonment Claims*

■ Officer Ryan seeks summary judgment dismissing the plaintiff's false arrest/unlawful imprisonment claim against him on the ground that plaintiff's arrest was supported by probable cause. "A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause is substantially the same as a claim for false arrest under New York law." *Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir.1996) (citation omitted). Under New York law, in order to assert a false arrest claim, a plaintiff must demonstrate that "the defendant intentionally confined him without his consent and without justification." *Id.* "The existence of probable cause to arrest constitutes justification and 'is a complete defense to an action for false arrest.' ". *Id.* (quoting *Bernard v. United States,* 25 F.3d 98, 102 (2d Cir.1994)).

■ Probable cause to arrest exists "when the arresting officer has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Singer v. Fulton County Sheriff,* 63 F.3d 110, 119 (2d Cir.1995)(internal quotations omitted). In order to determine if probable cause existed, "we consider the facts available to the officer at the time of the arrest." *Ricciuti v. N.Y.C. Transit Auth.,* 124 F.3d 123, 128 (2d Cir. 1997).

■ The issue of whether an arresting officer had probable cause to make the arrest may be determined as a matter of law if "the pertinent events and the knowledge of the officers" are not in dispute. *Weyant,* 101 F.3d at 852. If, however, the determination of whether probable cause existed is "predominately factual in nature," such a decision should be made by a jury. *Moore v. Comesanas,* 32 F.3d 670, 673 (2d Cir.1994).

■ The defendants argue that based upon Officer Ryan's knowledge of the ongoing problems between the LaGranges and their upstairs neighbors, the prior threats, and his observation of the plaintiff with a loaded weapon at 1:30 in the morning right after Castiglione and Frayne entered their apartment, there was probable cause to arrest LaGrange. However, the factual circumstances leading up to plaintiff's arrest are sharply disputed by the parties. The plaintiff claims that he went to his front door because he heard someone knocking on it. Further, a question of fact exists concerning whether LaGrange ever pointed the gun at Officer Ryan, thus evidencing an intent to use it. The complaint completed by Officer Ryan alleges that LaGrange possessed a loaded weapon with intent to use it against his neighbor. Officer Ryan further testified that LaGrange was raising his pistol from his hip up to his shoulder when he ordered him to drop the gun. However, Mr. and Mrs. LaGrange both testified that he held the gun at his hip, pointing down, and never attempted to raise it. Viewing the disputed facts in a light most favorable to the nonmoving plaintiff, the defendants' motion for summary judgment with respect to the plaintiff's false arrest/unlawful imprisonment claim must be denied.

## C. *Excessive Force*

■ Officer Ryan next contends summary judgment should be awarded in his favor with respect to plaintiff's excessive force claim. Claims that law enforcement officers used excessive force in the course of an arrest "must be analyzed under the Fourth Amendment and its standard of objective reasonableness." *Anderson v. Branen,* 17 F.3d 552, 558 (2d Cir.1994)(cit-

ing *Graham v. Connor,* 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989); *Tennessee v. Garner,* 471 U.S. 1, 8, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985)). This standard requires evaluating whether the officers acted reasonably in light of the totality of facts and circumstances present at the scene. *Anderson,* 17 F.3d at 559; *Lennon v. Miller,* 66 F.3d 416, 425 (2d Cir.1995). Factors to consider are the "severity of the crime at issue, whether the suspect possesses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham,* 490 U.S. at 396, 109 S.Ct. 1865. The key inquiry then, in proving a claim for excessive force, is whether the defendant's use of force was objectively reasonable.

■ Questions of fact preclude summary judgment with respect to plaintiff's excessive force claim.[5] It is understandable that plaintiff posed an initial threat by possessing a loaded pistol. However, he put the gun down immediately upon request. Thus, it is questionable whether he continued to present a threat to Officer Ryan. After he put the gun down, Officer Ryan was merely faced with a thin, frail, 83 year old man in his pajamas. There is no evidence that LaGrange attempted to flee or resist Officer Ryan. In addition, the parties dispute whether or not Officer Ryan ordered LaGrange to get down on the ground. Even if he did and the plaintiff did not comply for some reason, it is questionable whether the degree of force used to push the elderly plaintiff down and handcuff him was reasonably necessary. As a matter of fact, the degree of force

---

**5.** Plaintiff also asserts an excessive force claim against Sergeant Tremper and Lieutenant Gaston with respect to handcuffing the plaintiff to the bench in the booking room.

However, there is no evidence that either of these defendants handcuffed plaintiff to the bench. Therefore, the excessive force claim against them must be dismissed.

used is also in dispute. While the plaintiff claims that Officer Ryan pushed him down to the concrete and placed his knee over the middle of his back, Officer Ryan claims he only placed one hand on the plaintiff's back to prevent him from moving. Accordingly, summary judgment on plaintiff's excessive force claim against Officer Ryan must also be denied.

### D. *Denial of Medical Attention and Treatment*

■ The defendants claim that the plaintiff has failed to demonstrate that he was denied medical care or treatment at the time of his arrest and while he was being detained pending arraignment. To state a claim under § 1983 based on inadequate medical treatment, plaintiff must allege that defendant acted with "deliberate indifference to [a] serious medical need[ ]." *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *see also Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994)(in order for plaintiff's claim to succeed, he must prove that defendants were "deliberately indifferent" to his "serious medical needs"). To allege deliberate indifference, plaintiff must assert facts establishing that either his access to physicians for necessary medical care was unreasonably delayed or denied, or that prescribed medical treatment was withheld by a defendant for the sole purpose of causing plaintiff unnecessary pain. *See Gill v. Mooney,* 824 F.2d 192, 196 (2d Cir.1987); *see also Tomarkin v. Ward,* 534 F.Supp. 1224, 1230 (S.D.N.Y.1982)(citing *Todaro v. Ward,* 431 F.Supp. 1129, 1133 (S.D.N.Y.), *aff'd,* 565 F.2d 48 (2d Cir. 1977)).

■ The parties dispute whether LaGrange was in observable respiratory distress after his arrest and whether he asked for, but was denied, his medication. Plaintiff alleges that while at the police station, he was having noticeable difficulty breathing and was denied his inhaler or any other medical treatment. However, Sergeant Tremper and Lieutenant Gaston both testified that they did not observe plaintiff having any difficulty breathing, and Officer Ryan testified that he provided plaintiff with his inhaler upon request. Due to these discrepancies in the testimony, summary judgment cannot be granted with respect to either plaintiff's claim of denial of medical care at the time of his arrest or at the police station.

### E. *Search and Seizure*

■ The defendants first argue that because LaGrange appeared at his door at 1:30 a.m. with a loaded weapon pointed at Officer Ryan, and his wife was still in the apartment, exigent circumstances were present, warranting the need to ascertain the presence of additional weapons in the apartment. They also point to the fact that the search was limited to the bedroom, and only items relating to the safety of the officers and others were retrieved. However, summary judgment cannot be granted on this issue. The defendants' claim that the plaintiff appeared at his door pointing a loaded weapon at Officer Ryan is hotly disputed by the plaintiff. In addition, the question of exigency is further questionable in light of the fact that the elderly LaGrange, clad only in his pajamas, immediately put his pistol down upon request, and his elderly wife did not move from her chair, as ordered.[6]

---

**6.** The defendants also claim that Mrs. La-Grange impliedly gave consent to seize the other weapons in the apartment by confirming their presence, indicating where they

were located, and offering to retrieve them. However, the defendants have not provided sufficient evidence to warrant summary judgment on this issue. In addition, even assum-

### F. *Qualified Immunity*

█ Officer Ryan seeks qualified immunity with respect to plaintiff's claims of false arrest/unlawful imprisonment, excessive force, and unlawful search and seizure. "The doctrine of qualified immunity shields police officers acting in their official capacity from suits for damages under 42 U.S.C. § 1983, unless their actions violate clearly-established rights of which an objectively reasonable official would have known." *Thomas v. Roach,* 165 F.3d 137, 142 (2d Cir.1999)(citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)); *Ricciuti,* 124 F.3d at 127). A decision in favor of a public official based on qualified immunity is appropriate if (1) the conduct attributed to him is not prohibited by federal law, or, if such conduct is so prohibited; (2) if the plaintiff's right not to be subjected to such conduct was not clearly established at the time of the defendant's actions; or (3) if it was not objectively reasonable for the official to know that his conduct violated that right. *See X–Men Sec., Inc. v. Pataki,* 196 F.3d 56, 65–66 (2d Cir.1999); *see also Thomas,* 165 F.3d at 142–43. "The objective reasonableness test is met . . . if 'officers of reasonable competence could disagree' on the legality of the defendant's actions." *Thomas,* 165 F.3d at 143 (quoting *Lennon v. Miller,* 66 F.3d 416, 420 (2d Cir.1995)(quoting *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)).

█ In the present case, due to the significant disparities in the facts as alleged by both sides, and the fact that the facts must be viewed in light most favorable to the nonmoving plaintiff, Officer Ryan is not entitled to qualified immunity as a matter of law. Whether or not questions of fact on this issue are to be presented to a jury must await trial. *See Golino v. City of New Haven,* 950 F.2d 864, 871 (2d Cir.1991); *see also Warren v. Dwyer,* 906 F.2d 70, 74 (2d Cir.1990)(stating that, where factual issues exist prior to trial, defense of qualified immunity may be raised at the close of plaintiff's case on a motion for a directed verdict and on a subsequent motion for judgment notwithstanding the verdict)(citing *Krause v. Bennett,* 887 F.2d 362, 365 (2d Cir.1989)).

### G. *Municipal Liability*

█ Municipalities cannot be held liable under § 1983 based on the theories of respondeat superior or vicarious liability. *Monell v. Department of Social Servs.,* 436 U.S. 658, 694–95, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A municipality can be found liable under § 1983 only where

[T]he action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. Moreover . . . local governments . . . may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such custom has not reached formal approval through the body's official decision-making channels.

*Id.* at 690–91, 98 S.Ct. 2018. Thus, an unconstitutional governmental policy may be inferred either from the official pronouncements and actions of the governmental agency, or from custom. A municipal policy may also be imposed for a single decision by a municipal official who has final policymaking authority. *See Pembaur v. Cincinnati,* 475 U.S. 469, 480, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986); *see also*

---

ing that Mrs. LaGrange impliedly consented to the seizure of the weapons, she never consented to a search of the apartment for them,

nor did she consent to the search or seizure of the other items obtained.

*Krulik v. Board of Educ. of New York*, 781 F.2d 15, 23 (2d Cir.1986)(stating that "an individual official's acts can rise to the level of 'policy' when 'senior personnel' knowingly 'acquiesce' in their subordinates' behavior").

▆▆▆ At the outset, it should be noted that the plaintiff makes no claim of municipal policy due to a decision by a policy-making official. Thus, the plaintiff relies upon the existence of a municipal custom or policy for his assertion of municipal liability. The plaintiff asserts that the City may be held liable under four theories. Under the first and second theories, plaintiff alleges that the City has a custom or policy of deliberate indifference to the medical needs of detainees and restricts detainees' use of their own medication.[7] Plaintiff's third theory is that detainees are not told that they are permitted one telephone call. However, other than alleging the particular facts of the instant case, which is insufficient to raise an inference of a municipal custom or policy, *see City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985), the plaintiff has failed to come forward with any evidence that the challenged actions were taken pursuant to a custom or policy attributable to the City. Accordingly, plaintiff's first three arguments to impose municipal liability are rejected.

▆▆▆ Plaintiff's final theory challenges the physical restraint of arrestees and detainees. With respect to arrestees, the City of Kingston Police Department has a written policy which provides: "All persons taken into custody will be handcuffed with their hands behind their back." (Sussman Aff. Ex. W.) Thus, clearly, an official policy attributable to the City is at issue. Regarding physical restraint of de-

tainees, the defendants admit that the City of Kingston Police Department has a policy of securing detainees pending arraignment, but claim that the plaintiff has failed to show municipal liability because that policy is not unconstitutional. For obvious reasons, this argument is unavailing. At this stage of the proceedings, plaintiff need only make a showing that his alleged deprivation was pursuant to a municipal custom or policy. The defendants have admitted that such a policy exists. The constitutionality of that policy is not relevant to the determination of whether or not the plaintiff has stated a claim of municipal liability under § 1983.

In summary, while the plaintiff has alleged four theories for imposing municipal liability against the City, only his fourth theory concerning the physical restraint of arrestees and detainees can withstand the defendants' motion for summary judgment.

## H. *State Law Claims*

▆▆▆ The defendants argue that all state law claims against them must be dismissed for failure to file a notice of claim, pursuant to General Municipal Law § 50–e. The plaintiff concedes that his state law claims against the City must be dismissed because he never served a notice of claim, but alleges that a notice of claim is not required for intentional tort actions against police officers. However, under New York State law, no action involving "any negligent act or tort" committed by a police officer while acting within the scope of his employment may be commenced against a municipality or said officer unless a notice of claim has been served upon the municipality. N.Y. Gen. Mun. Law § 50–j (McKinney 1999)(emphasis added); *see also Balduzzi v. City of Syracuse*, No.

---

7. Plaintiff withdrew his claims of deliberate indifference to the medical needs of arrestees

and restriction on arrestees' use of their own medication.

96–CV–824, 1997 WL 52434, at \*2 (N.D.N.Y. Feb.4, 1997). Thus, the statute does not limit the requirement of a notice of claim to only negligent acts. Accordingly, plaintiff's state law claims against Officer Ryan, Sergeant Tremper, Lieutenant Gaston, and the City for assault, battery, false arrest, unlawful imprisonment, and malicious prosecution must be dismissed for failure to serve a notice of claim.[8]

## IV. CONCLUSION

Questions of fact preclude summary judgment with respect to the plaintiff's § 1983 claims for false arrest, excessive force, denial of medical treatment, and unlawful search and seizure. These disputed questions of fact also preclude a determination that Officer Ryan is entitled to qualified immunity as a matter of law. The plaintiff has sufficiently stated a claim for municipal liability concerning the physical restraint of arrestees and detainees. Finally, the plaintiff's state law claims for assault, battery, false arrest, unlawful imprisonment, and malicious prosecution must be dismissed for failure to file a notice of claim.

Accordingly, it is

ORDERED that the motion for summary judgment by defendants Michael Ryan, City of Kingston, and the John Doe defendants (John Tremper and Douglas Gaston) is GRANTED in part and DENIED in part:

1. The motion is GRANTED to the extent that

    a. Plaintiff's § 1983 claim of excessive force against defendants John Tremper and Douglas Gaston are dismissed for lack of personal involvement; and

    b. Plaintiff's state law claims for assault, battery, false arrest, unlawful

imprisonment, and malicious prosecution are dismissed for failure to file a notice of claim;

2. The motion is DENIED in all other respects.

IT IS SO ORDERED.

---

**8.** The state law claim for conversion against defendant Tsui is not affected.