Corey WILLIAMS, Plaintiff,

v.

The CITY OF NEW YORK, Det. Michael Dimeglio, Undercover # 3159, Undercover # 7975, Lt. "John" Kelly, Sgt. "John" Degiorgio, and P.O.'s John and Jane Doe # 1–10, individually and in their official capacities), Defendants.

No. 07–cv–5362 (NG)(VVP).

United States District Court, E.D. New York.

Oct. 18, 2012.

Rose M. Weber, New York, NY, for Plaintiff.

Elizabeth Dollin, Johana Castro, Morgan David Kunz, Corporation Counsel of the City of New York, New York, NY, for Defendants.

## OPINION AND ORDER

GERSHON, District Judge.

Plaintiff Corey Williams filed this action after a police narcotics investigation led to his indictment, arrest, and prosecution. He was acquitted at trial. The individual defendants and the City have now moved for summary judgment under Federal Rule of Civil Procedure 56 on all of the plaintiff's claims, except that the City has moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) on the claim for municipal liability under § 1983. For the reasons explained below, the court grants judgment in favor of the defendants on all claims.

### UNDISPUTED FACTS

Except as otherwise indicated, the record established that the following facts are undisputed.

### I. Operation Tidal Wave

In October 2006, state and federal law enforcement officers conducted a long-term drug investigation called "Operation Tidal Wave" in the Hammel Houses housing project in Queens, New York. The investigation involved undercover officers entering the Hammel Houses community over a period of time and attempting to buy illegal drugs. Because of the long-term nature of the investigation, the police did not immediately arrest persons selling drugs but rather collected information gathered by the undercover officers. At the end of the investigation, persons who sold drugs to the police were arrested in a process known as a "case take-down."

UC # 3519 was working undercover for Operation Tidal Wave in November 2006. UC # 7975 served as his "ghost," a person

whose primary purpose is to maintain the safety of the primary undercover officer purchasing the drugs.

During this time, plaintiff lived in the Hammel Houses. On November 1, 2006, UC # 3159 purchased four clear blue zip lock bags containing crack/cocaine from a person unknown to him. UC # 3159 asked the seller's name. The seller said to call him "Corey," and they exchanged telephone numbers. Later, UC # 3159 recorded this transaction in his paperwork and referred to the seller as "JD–Corey." The drugs were vouchered and sealed.

Substantially similar transactions happened on November 9, 12, 21, 2006, and January 4, 2007. At each encounter, UC # 3159 either contacted JD–Corey at the telephone number he had provided or approached him in person to initiate the transaction. At his deposition, plaintiff admitted that he owned a pre-paid cell phone with the telephone number UC # 3159 said was provided to him by JD–Corey, although he could not recall when.

On November 18, 2006, after the third drug purchase, UC # 3159 positively identified "JD–Corey" as plaintiff Corey Williams from a compilation of mug shots that had been prepared in advance by his police supervisor, according to periodic police practice.

In opposition to the present motions, plaintiff submitted his deposition testimony, in which he stated that he "never sold drugs to anyone" and that he specifically "did not sell drugs to anyone in November 2006, December 2006, or January 2007," nor did he assist anyone selling drugs during that time.

## II. Indictment & Arrest Warrant

On January 30, 2007, a Queens County Grand Jury indicted plaintiff on five counts of criminal sale of a controlled substance in the third degree in violation of New York Penal Law § 220.39(1) and four counts of criminal sale of a controlled substance in or near school grounds in violation of New York Penal Law § 220.44(2). The Grand Jury found that on November 1, 9, 12, and 21, 2006, and January 4, 2007, plaintiff knowingly and unlawfully sold cocaine and that the sales on November 1, 9, 12, and 21, 2006, took place on or near school grounds.

On January 31, 2007, the Supreme Court, Queens County, issued an arrest warrant for plaintiff.

## III. The Arrest & Trial

On February 1, 2007, Detective Michael DiMeglio, accompanied by other police officers, entered the plaintiff's apartment. Plaintiff alleges that the police were in search of his brother, Tavares Charlie, and claims that because neither he nor his mother would tell them where plaintiff's brother was, plaintiff was arrested. Detective DiMeglio arrested Plaintiff pursuant to the warrant. Shortly after the arrest, UC # 3159 visually identified plaintiff as being "JD–Corey."

Plaintiff was tried before a jury. He did not testify. UC # 3519 and UC # 7975 testified at the trial. Plaintiff was acquitted on July 25, 2007.

## DISCUSSION

The individual defendants and the City have now moved for summary judgment under Federal Rule of Civil Procedure 56 on all of the plaintiff's claims, except that the City has moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) on the claim for municipal liability under § 1983, as to which discovery has been held in abeyance.

## I. Summary Judgment Standard

■ A motion for summary judgment under Federal Rule of Civil Procedure 56 must be granted if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. *Lipton v. Nature Co.*, 71 F.3d 464, 469 (2d Cir.1995). The moving party must demonstrate the absence of any material factual issue genuinely in dispute. *Id.* The court must view the inferences to be drawn from the facts in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). However, the non-moving party may not "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir.1986). Nor may the non-moving party "rest upon the mere allegations or denials of his pleading." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Rather, the non-moving party must produce specific facts sufficient to establish that there is a genuine factual issue for trial. *Id.* at 322–23, 106 S.Ct. 2548. If the evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (stating that the "mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find [for the non-moving party]").

## II. Standard for Motion to Dismiss Under Rule 12(c)

■ A motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure is governed by the same standards as a motion to dismiss pursuant to Rule 12(b). *LaFaro v. N.Y. Cardiothoracic Group, PLLC*, 570 F.3d 471, 475 (2d Cir.2009). The court must "accept as true all allegations in the complaint and draw all reasonable inferences in favor of the non-moving party." *Vietnam Ass'n for Victims of Agent Orange v. Dow Chemical Co.*, 517 F.3d 104, 115 (2d Cir.2008) (internal quotation marks omitted). The court may consider only the "facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference." *Leonard v. Israel Discount Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir.1999) (internal quotation and citation omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter ... to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (internal quotation marks omitted). Plausibility "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## III. 42 U.S.C. § 1983

■ "Section 1983 imposes liability on anyone who, under color of state law, deprives a person of any rights, privileges, or immunities secured by the Constitution" of the United States. *K & A Radiologic Tech. Servs., Inc. v. Comm'r of the Dept. of Health*, 189 F.3d 273, 280 (2d Cir.1999) (quoting *Blessing v. Freestone*, 520 U.S. 329, 340, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997)). "[T]he core purpose of § 1983 is 'to provide compensatory relief to those deprived of their federal rights by state actors.'" *Hardy v. N.Y.C. Health &*

*Hosps. Corp.*, 164 F.3d 789, 795 (2d Cir. 1999) (quoting *Felder v. Casey*, 487 U.S. 131, 141, 108 S.Ct. 2302, 101 L.Ed.2d 123 (1988)).

■■■ Section 1983 "does not create a federal right or benefit; it simply provides a mechanism for enforcing a right or benefit established elsewhere." *Morris— Hayes v. Board of Educ. of Chester Union Free Sch. Dist.*, 423 F.3d 153, 159 (2d Cir.2005) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 816, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985)). "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161, 112 S.Ct. 1827, 118 L.Ed.2d 504 (1992).

■■■ Malicious prosecution, false arrest, and abuse of process give rise to liability under 42 U.S.C. § 1983. *Savino v. City of New York*, 331 F.3d 63 (2d Cir.2003).

### a. False arrest/imprisonment [1]

■■■ In order to prove a claim of false arrest or imprisonment, a plaintiff must show: (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged. *Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995). Confinement is "privileged" if the defendant had probable cause to arrest the plaintiff. *Jocks v. Tavernier*, 316 F.3d 128, 135 (2d Cir.2003). A plaintiff cannot es-

tablish a claim for false arrest if probable cause existed at the time of the arrest. *Singer*, 63 F.3d at 118–19. Probable cause is presumed to exist if a plaintiff is arrested pursuant to an arrest warrant. *Martinetti v. Town of New Hartford*, 12 Fed. Appx. 29, 32 (2d Cir.2001); *Blasini v. City of New York*, 2011 WL 6224605, *4 (S.D.N.Y.2011) (pre-arrest indictment demonstrates that probable cause existed at the time of the arrest and provides a source of probable cause independent of any warrant (internal quotation marks and citations omitted)). "A plaintiff who argues that a warrant was based on less than probable cause 'faces a heavy burden.'" *Sheikh v. City of New York*, 2008 WL 5146645, *7 (E.D.N.Y.2008) (citing *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir.1991)). He must make a "substantial preliminary showing" that the officer "knowingly and intentionally, or with reckless disregard for the truth, made a false statement" that was "necessary to the finding of probable cause." *Id.* (internal quotation marks omitted). The validity of an arrest does not depend on an ultimate finding of guilt or innocence. *Pierson v. Ray*, 386 U.S. 547, 555, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967).

■■■ There is no dispute that plaintiff was arrested pursuant to an arrest warrant issued upon the grand jury's return of an indictment against him. Therefore, plaintiff's arrest is presumptively privileged, and, in order to proceed to trial, he must proffer evidence sufficient for a reasonable jury to find that the indictment was procured by fraud, perjury, or the

---

1. To the extent that plaintiff alleges separate claims of false imprisonment and false arrest, the court treats the claims together as one. *See Weyant v. Okst*, 101 F.3d 845, 853 (2d Cir.1996) ("'The common law tort of false arrest is a species of false imprisonment....'"). "False arrest is simply an un-

lawful detention or confinement brought about by means of an arrest rather than in some other way and is in all other respects synonymous with false imprisonment." *Covington v. City of New York*, 171 F.3d 117, 125 (2d Cir.1999) (Glasser, J., dissenting)

misrepresentation or falsification of evidence. *See Martinetti*, 12 Fed.Appx. at 33. After full discovery of the defendants, plaintiff offers no basis from which the jury could infer that the officers deliberately lied, misrepresented the evidence, or presented false evidence to the grand jury. *See Jenkins v. City of New York*, 1999 WL 782509, *8–9 (S.D.N.Y.1999) (bare allegation that police knew of perjured grand jury testimony insufficient to proceed to trial).[2]

Plaintiff argues that, because plaintiff and defendant give markedly different accounts of the events that led up to plaintiff's arrest, the issue of probable cause must be decided by the jury. The cases plaintiff relies on for the argument uniformly involve arrests without warrants. *See, e.g., Murphy v. Lynn*, 118 F.3d 938, 945 (2d Cir.1997); *Weyant v. Okst*, 101 F.3d 845, 855 (2d Cir.1996); *Richardson v. City of New York*, 2006 WL 2792768 (E.D.N.Y.2006); *Taylor v. City of New York*, 2006 WL 1699606 (S.D.N.Y.2006); *Kirk v. Metropolitan Transp. Authority*, 2001 WL 258605 (S.D.N.Y.2001); *La-Grange v. Ryan*, 142 F.Supp.2d 287 (N.D.N.Y.2001); *Naccarato v. Scarselli*, 124 F.Supp.2d 36 (N.D.N.Y.2000). These cases are inapplicable here because plaintiff was arrested subsequent to an indictment and pursuant to an arrest warrant, which presumptively establishes probable cause for the arrest.

Not only is there a presumption of probable cause arising from the indictment and arrest warrant, but also the undisputed facts in this case as to the information known to the arresting officers established ample probable cause. UC # 3159 identified plaintiff from a compilation of mug shots as the person who, at the time of the identification, had sold him drugs on three occasions. After the mug shot identification, the same person sold UC # 3159 drugs two other times prior to the arrest. UC # 3159 observed that the name given to him by the person who sold him drugs was "JD–Corey," which is consistent with the plaintiff's first name.

Plaintiff denies ever selling or assisting anyone in selling drugs and argues that the sole inference the fact-finder must draw from his denial is that the police officers lied about observing plaintiff selling drugs, falsified paperwork, and misled prosecutors. While his denials create an issue of fact as to whether he dealt drugs, without more they do not create a sufficient factual basis for a reasonable jury to decide the indictment and arrest warrant were procured by fraud, perjury, or the misrepresentation or falsification of evidence.

Plaintiff argues that, "[u]nder plaintiff's version of the facts, which must be accepted as true for purposes of the instant motion, defendant U/C # 3159 concocted an entirely false story and falsified his paperwork" and that the arrest warrant was secured by "false testimony." He later asserts that "[s]imilarly, defendant U/C # 7975 adopted, endorsed, and strengthened the false story concocted by U/C # 3159, going so far as to falsify entries in his memobook to reflect the supposed inci-

**2.** Courts have found that similar denials, absent other evidence, do not constitute a sufficient factual issue for trial in the context of malicious prosecution claims. *See Cotto v. Pabon*, 2008 WL 4962986, *15 (S.D.N.Y.2008) ("The fact that Cotto's version of the incident contradicts that of the officers is not enough to present an issue of fact as to the probable cause element of Cotto's malicious prosecution claim."); *Brazeau v. Zon*, 2007 WL 2903617, *12 (W.D.N.Y.2007) ("conflicting testimony between the malicious prosecution claimant and the police defendants and other prosecution witnesses is insufficient to rebut the presumption of probable cause").

dents." To begin with, this is not a motion to dismiss, but a summary judgment motion. As such, plaintiff's "version of the facts" must be supported by specific facts sufficient to establish that there is a genuine factual issue for trial. *See, e.g., Celotex Corp.,* 477 U.S. at 322–23, 106 S.Ct. 2548. Other than his denial of drug dealing, plaintiff offers no citations to the record in support of the claim of false evidence or testimony, and this court is unable to find any evidentiary support after a careful search of the record.[3] All that plaintiff does is assume the officers lied because he states that he did not deal in drugs. This bare assumption is insufficient to withstand a motion for summary judgment.

Finally, the plaintiff's rationales for a false arrest—including that the police arrested him in an effort to bolster their arrest statistics—amount to nothing more than mere speculation, as plaintiff has proffered no evidentiary support for these claims. The defendants' motion for summary judgment on plaintiff's false arrest/imprisonment claim is granted.

### b. Malicious prosecution

■■■ To establish a claim for malicious prosecution, the plaintiff must show that: (1) the defendant initiated a prosecution against the plaintiff; (2) the defendant lacked probable cause to believe the proceeding could succeed; (3) the defendant acted with malice; and (4) the prosecution was terminated in the plaintiff's favor. *Savino v. City of New York,* 331 F.3d 63, 72 (2d Cir.2003). In addition, the plaintiff must show that he was seized for Fourth Amendment purposes. *Estiverne v. Esernio–Jenssen,* 833 F.Supp.2d. 356, 380 (E.D.N.Y.2011); *cf. Singer v. Fulton Cnty. Sheriff,* 63 F.3d 110, 117 (2d Cir.1995).

The existence of probable cause is a complete defense to a claim of malicious prosecution. *Savino,* 331 F.3d at 72. In a malicious prosecution claim, an indictment by a grand jury creates a presumption of probable cause for a criminal proceeding, which may be rebutted only by evidence that police witnesses misrepresented, falsified, or suppressed evidence before a grand jury or otherwise acted in bad faith. *Id.* On a motion for summary judgment, a plaintiff "bears the burden of proof in rebutting the presumption of probable cause that arises from the indictment." *Id.* at 73.

■■■ As already noted, plaintiff was indicted by a grand jury and has offered no evidence, other than his denial of engaging in drug sales, to rebut the presumption of probable cause established by the indictment. That denial is insufficient to overcome the presumptive probable cause and create a material issue of fact because it does not show that police witnesses misrepresented, falsified, or suppressed evidence before a grand jury or otherwise acted in bad faith. Nor is his denial alone a sufficient basis for a reasonable jury to conclude that the defendants acted with malice. For these reasons, his claim for malicious prosecution fails.

### c. Abuse of process

■■■ To succeed on a claim for abuse of process, plaintiff must establish that defendants: (1) employed regularly issued legal process to compel performance (or forbearance) of some act; (2) with intent to do harm without excuse or justification; (3) in order to obtain a collateral objective that is outside the legitimate ends of the

---

**3.** Nor has plaintiff proffered any of the testimony that was presented to the grand jury. *See Rothstein v. Carriere,* 373 F.3d 275, 285 (2d Cir.2004) (burden of establishing what occurred before the grand jury, and the circumstances that warrant a finding of sufficient misconduct, lies with the plaintiff).

process. *Savino,* 331 F.3d at 76. As discussed above, there was probable cause for plaintiff's arrest and prosecution. Therefore, defendants were excused and justified in employing regularly issued legal process. *Golden v. City of New York,* 418 F.Supp.2d 226, 235 (E.D.N.Y.2006).

In addition, plaintiff has presented no evidence of a collateral objective outside of the legitimate ends of the process. Plaintiff argues that "[a] reasonable jury could certainly believe, under the totality of the circumstances, that defendants had the collateral objective of making this arrest in order to appear more productive and thereby advance their careers, to make Operation Tidal Wave appear more successful in the press, and/or to coerce plaintiff into providing information about his brother Tavares Charlie." Fatally, however, plaintiff submits no evidence in support of these speculations, and thus no jury could reasonably conclude that any of these goals constituted the defendants' collateral objective. Thus, plaintiff's claim fails.

### d. Right to a fair trial

 An individual's right to a fair trial under the Fifth and Fourteenth Amendments may be violated when an officer supplies false information to a prosecutor about the individual. *Ricciuti v. N.Y. City Transit Auth.,* 124 F.3d 123, 130 (2d Cir.1997). This is true even if the officer had probable cause to arrest the accused in the first place. *Cf. Jocks,* 316 F.3d at 138 (malicious prosecution claim).

 Again, plaintiff's denial of engaging in drug sales is the only evidence he offers in support of his claim that police officers supplied false information to the prosecutor about him. There is no evidence that any of the police officers in this case knew plaintiff independently or bore any ill will against him. Plaintiff has shown no evidence of improper motive for the alleged fabrication. The grand jury properly returned an indictment. After a criminal trial, plaintiff was acquitted on all charges. Plaintiff's argument that the fact of his acquittal and his denial that he engaged in drug sales would allow a reasonable jury to find that his right to a fair trial had been violated is without merit.[4]

### e. Qualified Immunity

 An officer is entitled to qualified immunity from a § 1983 suit if his conduct did not violate a plaintiff's clearly established constitutional rights. *See, e.g., Mandell v. County of Suffolk,* 316 F.3d 368, 385 (2d Cir.2003). Because of my ruling that the officers are entitled to summary judgment on plaintiff's false arrest, malicious prosecution, abuse of process, and fair trial claims, it is unnecessary to address the defense of qualified immunity.

### IV. Municipal Liability

 Defendant City of New York moves under Rule 12(c) for judgment on

---

**4.** In his fifth claim for relief, plaintiff alleges that "[i]n creating false evidence against plaintiff COREY WILLIAMS, in forwarding false evidence and information to prosecutors, and in providing false and misleading testimony, defendants violated plaintiff's constitutional right to a fair trial under the Due Process Clause of the Fifth and Fourteenth Amendments of the United States Constitution." Am. Compl. ¶ 58

In his opposition to summary judgment, plaintiff argues that this statement also encompasses a claim for a violation of his Sixth Amendment fair-trial rights. In his complaint, plaintiff specifies his constitutional claims arise from the Fifth and Fourteenth Amendments; he fails to identify the Sixth Amendment. Plaintiff may not amend his complaint through his motion papers, *see Wright v. Ernst & Young LLP,* 152 F.3d 169, 178 (2d Cir.1998), and, in any event, any claim under the Sixth Amendment has no more merit than plaintiff's other constitutional claims.

plaintiff's municipal liability claim under *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). "*Monell* does not provide a separate cause of action for the failure by the government to train its employees; it *extends* liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." *Segal v. City of New York,* 459 F.3d 207, 219 (2d Cir.2006). Because I have determined above that plaintiff has not established any underlying constitutional violations, his *Monell* claims are dismissed.

## V. Supplemental Jurisdiction for State Law Claims

Federal courts may exercise supplemental jurisdiction when the state and federal claims are part of "a common nucleus of operative fact." *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). When retaining jurisdiction over a state claim, a court must consider "the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction." *Carnegie—Mellon Univ. v. Cohill,* 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988). Plaintiff's federal and state law claims are part of the common nucleus of operative fact. And, as the parties have had the opportunity to fully brief the state law claims, it is in the interests of judicial economy, convenience, and fairness for this court to exercise supplemental jurisdiction over plaintiff's remaining state law claims.

Plaintiff's claim for malicious prosecution in this case is no different whether analyzed under Section 1983 or state law. *See Broughton v. State,* 37 N.Y.2d 451, 456, 373 N.Y.S.2d 87, 335 N.E.2d 310 (1975). Therefore, summary judgment is appropriate in favor of the defendants on plaintiffs state law claim for malicious prosecution.

Defendants challenge plaintiffs state law claims for negligent hiring, training, supervision, and retention against the City. To state a claim for negligent hiring, retention, training or supervision, plaintiff must show that "the employer 'knew or should have known of the employee's propensity for the conduct which caused the injury' prior to the injury's occurrence." *Ehrens v. Lutheran Church,* 385 F.3d 232, 235 (2d Cir.2004) (quoting *Kenneth R. v. Roman Catholic Diocese of Brooklyn,* 229 A.D.2d 159, 654 N.Y.S.2d 791 (2d Dept. 1997)). Defendants argue that plaintiff has put forward no evidence that the City had knowledge that any of the defendants had the propensity to arrest plaintiff without probable cause or maliciously prosecute him. Plaintiff does not address this argument in his brief and the record contains no evidence in support of the claim. Therefore, summary judgment is granted in favor of the City on plaintiff's state law claims for negligent hiring, training, supervision, and retention.

Defendants also challenge plaintiff's claim of intentional infliction of emotional distress. "The tort of intentional infliction of emotional distress has four elements: (1) extreme and outrageous conduct; (2) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." *Linde v. Arab Bank, PLC,* 384 F.Supp.2d 571, 590 (E.D.N.Y.2005) (citing *Howell v. New York Post Co., Inc.,* 81 N.Y.2d 115, 596 N.Y.S.2d 350, 612 N.E.2d 699 (1993)). Defendants argue this claim must be dismissed because: (1) plaintiff failed to bring a mandatory Notice of Claim against the City for this claim; (2) public policy prohibits re-

covery of claims of intentional infliction of emotional distress against the City; and (3) there is no evidence that any of the defendants' conduct was so outrageous as to give rise to severe emotional distress. Again, plaintiff does not address this argument in his brief.

■ Under New York law, a notice of claim is a condition precedent to bringing a tort claim against a municipality. *See* N.Y. Gen. Mun. Law § 50—e; *O'Brien v. City of Syracuse*, 54 N.Y.2d 353, 445 N.Y.S.2d 687, 429 N.E.2d 1158 (1981). It must set forth, among other things, the nature of the claim and must be served within 90 days after the claim arises. Gen. Mun. Law § 50—e. Plaintiff does not argue that he filed a notice of this claim and the record contains no evidence of such a filing. Therefore, summary judgment in favor of the City is granted on plaintiff's claim for intentional infliction of emotional distress.

### CONCLUSION

For the foregoing reasons, the individual defendants' and the City's motion for summary judgment on plaintiff's claims is GRANTED. The City's motion for judgment on the pleadings on the claim for municipal liability under § 1983 is GRANTED.

The Clerk of Court is directed to close this case.

**SO ORDERED.**